# CHARLESTON.

C. C. CHEEK v. DIRECTOR GENERAL OF RAILROADS.

Submitted October 19, 1920.   Decided October 26, 1920.

1.  RAILROADS—*Pedestrian on Track Commonly Used as Pathway Held a Mere Licensee.*

    One having the ordinary power to discern and appreciate danger, who, in common with others and with the implied knowledge of the operator, uses part of a railroad track as a pathway for his own convenience, elsewhere than at a public crossing, is at most a mere licensee, to whom the company owes no other or higher duty than it owes a trespasser. p. 322).

2.  SAME—*Injuries to Pedestrian Held Not Actionable Unless He Was Discovered.*

    An adult, not an employee of the company, in the full possession of the faculties necessary to enable him to foresee and perceive the dangers attending his presence upon railroad property, injured while using a railroad track as a footpath for his own convenience, at a point other than a public crossing, cannot recover damages therefor from the company, unless it be shown that after he was discovered upon the track by the employees of the company they did not use reasonable care to avoid injuring him.   (p. 325).

(WILLIAMS, PRESIDENT, absent).

Error to Circuit Court, Mingo County.

Action by C. C. Cheek against the Director General of Railroads. Verdict and judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*F. M. Rivinus,* and *Holt, Duncan & Holt,* for plaintiff in error.

*Wiles & Bias,* for defendant in error.

LYNCH, JUDGE:

The judgment reviewed upon this writ resulted from the trial of an action brought to recover damages for an injury inflicted upon plaintiff by a train operated by the Norfolk & Western Railway Company under the war power exercised by the Director General of Railroads. The accident occurred at Delorme, an unincorporated mining village of about 200 residents, most if not all of whom, including plaintiff when injured, were employees and agents of Red Jacket Consolidated Coal & Coke Company, a mining corporation and owner of the land in that community except the railroad right of way.

At and through the village east and west were three separate railroad tracks owned and operated by the Norfolk & Western Railway Company. The first or northern track was devoted to the use of west-bound trains, the second to east-bound trains, and the third was for indiscriminate use as a siding. Between the tracks and the Big Sandy River was a narrow plot of ground occupied for the most part by buildings constructed, owned and used by the Red Jacket Company in the conduct of its coal mining operations, including its mercantile business and administrative department besides a post office and a few residences occupied by its employees. On the opposite or north side of the tracks were several residences likewise occupied by employess and a rooming and boarding house also owned and operated by the coal company for the accommodation and convenience of its transient employees, among whom were the plaintiff and J. J. Kidd. The lot on which the boarding house stood adjoined the railroad right of way, and on or near the division line between them was a fence and in it a gateway opening about 10 or 12

feet from the northern end of the railroad ties. Through this gate plaintiff and Kidd, after they had eaten supper at the boarding house, passed on the evening of the injury, May 8, 1918, and, while it was light and the tracks plainly visible, entered upon the railroad right of way and approached the northern or west-bound track where their further progress across the three tracks was arrested by a passing east-bound freight train on the second track, and while occupying that position plaintiff sustained the injury for which he has sued. It resulted from contact with the tender of a backward moving engine drawing two or more flat top cars composing a work train and moving westward on the track near which plaintiff and Kidd stood during the passage of the east-bound freight train on the second track.

The negligence charged in the first of the two counts of the declaration is the breach of the duty "to use reasonable, ordinary and proper care for the protection and to prevent injury to persons on or in dangerous proximity to its (defendant's) railroad track;" and in the second the breach of the duty "to exercise due, reasonable and proper care and to make, promulgate and enforce proper rules to avoid injuring this plaintiff and others who might be upon and near its (defendant's) said track," and to keep a "lookout or watchman on the front of the said train, and without sounding any whistle or bell or other warning as it (defendant) was in duty bound to do under the laws of this state while passing the said village and at the said crossing."

To avoid misapprehension it is necessary to note in this connection the fact of the nonexistence of a public crossing where the accident happened. That point is approximately equidistant from two recognized public crossings, either one of which was available for use by pedestrians, though access thereto from the boarding house was attended with more difficulty, wherefore plaintiff and others usually crossed the tracks between the public crossings in going to and returning from the lot on which it stood. So general indeed was the public use of the railroad track that defendant is presumed to have been cognizant of it. But did such presumed notice or knowledge

of the appropriation of its property for the temporary convenience of an inconsiderable number of village residents of mature age and possessed of all the usual faculties, mental and physical, excuse the indifference of plaintiff and Kidd, the latter of whom escaped injury, and place upon defendant liability for the damage done? Plaintiff seeks exoneration from the consequences necessarily resulting from apparent disregard for his own safety in an obviously dangerous situation and imposition of liability on defendant for his own carelessness. He was when injured a trespasser upon defendant's property, or at most a mere licensee. The train that struck him was rightfully upon the track set apart for its westward movement. Admittedly he knew the frequency with which freight trains passed and repassed over and along the tracks through Delorme; indeed he could not have been unaware of the repeated and almost constant passage of defendant's locomotives, cars and other transportation facilities. He was there and saw these daily occurrences, and yet seeing and knowing the imminence of the danger to himself and others he and Kidd stood either on the end of the railroad ties or, if not on the ties, in such immediate proximity to the rails that the part of the projecting tender could not avoid the impact unless the train stopped or he retired to a place of safety before it reached him.

If defendant's agents and employees had observed the danger to which plaintiff had exposed himself, as probably they could have done had they maintained a constant watch for pedestrians upon the track where they had no lawful right to be at any time, and especially during the movement of trains along and over the tracks, of course the duty would have devolved upon them to take any reasonable and necessary precaution to prevent injuring him, though he was a trespasser. That they did not see plaintiff until the train, running at the rate of 30 miles an hour, was about sixty feet from the position he occupied, and that shrill blasts of the engine's whistle sounded an alarm and warning of its approach is clear from the evidence. This warning Kidd heard and heeded, thereby saving himself from the impending danger, though

plaintiff, who stood eight or ten feet east of him, either did not hear the warning or heard it too late to escape the blow he received. The time the whistle blew does not appear, but as the engineer first saw plaintiff when about 60 feet away, it was then or immediately thereafter that he sounded the alarm signal.

The case of *Robertson* v. *Coal & Coke Ry. Co.*, 87 W. Va. 106, 104 S. E. 615, recently decided, involves facts so much like these detailed here that the principles of law applicable to the one case are applicable to the other and controlling upon all the questions raised. See also *Blagg* v. *B. & O. R. Co.*, 83 W. Va. 449.

To demonstrate the inapplicability of these principles to the facts of the Robertson case plaintiff there cited and relied on *Stuck* v. *K. & M. Ry. Co.*, 76 W. Va. 453, and *Prok* v. *N. & W. Ry. Co.*, 75 W. Va. 697, as also do counsel for Cheek. But considering the ages of the persons injured, Stuck then being about ten years old and Prok being about four, and the facts and circumstances in proof, the comparative difference between the principles governing the two classes of cases becomes obvious. Those cases were dealing with infants, whose immature and undeveloped powers of discernment do not qualify them to appreciate and avoid the consequences of their own immaturity and rashness. It is also true that liability attaches to a railroad carrier for an injury to an adult, though a trespasser, under like or similar circumstances, as the opinion in each case says, where the agents of the company could have avoided the injury by the use of reasonable care after observing the injured person on the track. In other words, it is well settled law in this state that a railroad company cannot with impunity injure or kill even a trespasser on its property if after seeing him in a perilous position it does not diligently endeavor to prevent contact with him. But it is equally the imperative duty of a trespasser to exercise the same degree of care for his own safety. He cannot deliberately close his eyes and ears and sue for an injury which he himself could have prevented had he taken the proper and necessary precaution. If with full knowledge and notice of the danger evidenced by

the very existence of the tracks before him at a point where he has no right to be and of the frequent passage of trains along and over them, he does not use the faculties with which he is endowed to protect himself, on what theory should he be allowed to mulct the carrier in damages? Plaintiff needed no other notice than the railroad furnished him of the imminence of the obvious danger in which he voluntarily and indifferently placed himself. Though unfortunate, the evidence places upon him the consequences of his own rashness.

As counsel for plaintiff do not discuss the averment of the second count as to the promulgation of rules, presumably because of their irrelevancy to actions other than those brought and prosecuted by employees for injuries suffered by them in the course of their employment, nothing is said herein respecting such rules.

For reasons assigned our order will reverse the judgment, set aside the verdict, and remand the case.

*Reversed and remanded.*