EDNA BELL HALL, *Admx., etc.*

*v.*

MONONGAHELA WEST PENN PUBLIC SERVICE COMPANY

(No. 9732)

Submitted January 15, 1946. Decided March 5, 1946.

548

 

*Ernest R. Bell,* for plaintiff in error.

*Alfred R. Putnam,* for defendant in error.

RILEY, JUDGE:

This is an action of trespass on the case instituted by Edna Bell Hall, Administratrix of the personal estate of Thomas Hall, deceased, against the Monongahela West Penn Public Service Company, a corporation. The trial court set aside a verdict for defendant and awarded plaintiff a new trial on the ground that the latter's instruction embodying the doctrine of last clear chance should have been given. The defendant prosecutes error.

Hall was struck and killed by one of defendant's cars on its Fairmont-Montana interurban line. The fatality occurred within the town of Rivesville at a point where defendant's tracks cross Pharoah's Run. A concrete arch culvert provides the base for twenty-one feet of the tracks at this crossing. One hundred eighty-five feet to the east of this culvert the tracks cross Jackson Street. To the southwest of this intersection is a "waiting shed", spoken of frequently as "Stop 97". From Jackson Street to a point approximately two hundred feet to the west of Pharoah's Run the tracks are on the private property of defendant. From Stop 97 to the center of the culvert the tracks are straight. At the latter point a curve begins, its point of tangent being three hundred sixty feet to the northwest. On the south side of the tracks at the culvert a wooden walkway with side rail is maintained for the protection of employees engaged in switching cars on and off a siding running to the south of the main line a short distance to the east

of the culvert. On the map introduced on behalf of defendant, and from its evidence, plaintiff's decedent, at the time he was struck, was on the portion of the tracks over the concrete culvert, to be exact, seven feet east of the point of curve, and five feet west of the easternmost edge of the culvert. Using this position as a starting point, the point of the switch, referred to above, is twenty-eight and nine-tenths feet to the east.; and one hundred ten feet to the west a pole stands to the south of the tracks on which is a "whistle sign". The car involved was forty-three feet in length and of a two-truck type, with eight wheels.

Just before he was killed, Hall had asked plaintiff's witness, Brady, who was waiting in the shed at Stop 97, for a match with which to light a cigarette. Shortly thereafter Brady observed Hall walking in the center of the tracks toward the culvert, his purpose, as testified to by other witnesses for plaintiff, being to meet certain members of his family who were attending a picture show several blocks to the west in Rivesville. The interurban car approached from the west. The night was dark and rain was falling.

According to Bragg, a passenger, one of the plaintiff's witnesses, the deceased was observed from a point one hundred thirty to one hundred seventy-five feet just east of and walking toward the culvert, with his head down so that his cap shaded his eyes. This witness testified that he called the motorman's attention to the presence of a man on the track, and the latter turned around, looked at witness and said, "Who is running this car me or you? * * * about that time he hit and I says, 'There, you have killed a man.' "; that the motorman did not apply the brakes until after he had struck Hall; that the car was being operated at a speed of thirty to thirty-five miles an hour; and that no whistle or bell was sounded. A number of other witnesses testified that the car came to a very sudden stop, and that the motorman did not blow any whistle.

The motorman estimated the speed of the car at fifteen to twenty miles an hour. He testified that the headlight first revealed decedent when the car was within forty to fifty feet of him; that the emergency brakes were applied promptly; that the car came to a stop about thirty feet beyond the "throw" of the switch; and that at the point of the switch decedent's body was found between the wheels of the rear truck of the car after it had stopped. He further testified that he was sounding the whistle, and had just finished, at the time he first saw decedent; that the latter was standing in the middle of the tracks, facing the platform to the south of the culvert; that two good steps would have placed him in a place of safety; that he expected decedent to step over to the platform to safety; and that upon becoming aware of decedent's peril, the emergency brakes were promptly applied.

From what distance the headlight of the interurban car would first throw its rays on the tracks at the east end of the culvert, where decedent was either standing or walking, is not shown with any degree of certainty.

Before we may appraise the ruling before us on this writ of error, it is necessary to determine whether there is a sufficient showing of primary and contributory negligence.

Under our cases Hall was at most a mere licensee. *Blagg, Admr.* v. *Baltimore & Ohio Railroad Co.*, 83 W. Va. 449, 98 S. E. 526; *Tompkins* v. *Sunday Creek Co.*, 68 W. Va. 483, 69 S.E. 980; *Bralley* v. *Norfolk & W. R. Co.*, 66 W. Va. 462, 66 S.E. 653; *Melton* v *C. & O. R. Co.*, 64 W. Va. 168, 61 S.E. 39. "One not in the employ of a railway company, using its tracks as a walk way over a portion thereof which pedestrians are accustomed to use for such purpose, but not at a public crossing, is at most a mere licensee, and such railway company owes to him no higher or other duty than it owes to a trespasser." Pt. 1 syl., *Blagg, Admr.* v. *Baltimore & Ohio Railroad Co., supra.* That duty was no higher than not

wantonly or wilfully to injure decedent. *Ballard* v. *Charleston Interurban R. R. Co.*, 113 W. Va. 660, 169 S.E. 524.

Reverting again to the facts, and assuming that Hall was standing at the point contended for by the defendant, the car ran a distance of fifty-five to sixty feet after decedent was struck. Assuming as true, as plaintiff's witness Bragg testified, that the emergency brakes were not applied until after Hall was struck and defendant's car was at the place where the witness Bragg says he informed the motorman of decedent's presence on the tracks, the car could not have reached the point where defendant's witnesses placed decedent at the time he was struck. If Bragg's testimony is believed which, in our opinion, the jury had a right to do, the motorman either wantonly failed to discover decedent in his position of peril after Bragg's admonition, or, having discovered decedent's peril at the time he was admonished, wantonly neglected to apply the brakes in time to avert killing decedent. In either event defendant was guilty of wanton and wilful negligence, which, under this record, proximately resulted in decedent's death. It follows that, in our opinion, there was sufficient evidence to carry the case to the jury on the question whether defendant was wantonly derelict in its duty.

Whether decedent was walking up the tracks with his head down and apparently maintaining no lookout for oncoming cars, as shown by plaintiff's evidence, or was standing on the tracks facing the platform in the direction of the Monongahela River, as detailed by defendant's witnesses, the jury was entitled to find that at the time he was killed decedent was guilty of contributory negligence. He was then and there in a position of peril and apparently so oblivious thereto that it was a jury question whether decedent could extricate himself therefrom. There can therefore be no recovery in this case unless, as contended by plaintiff, the last clear chance doctrine should apply.

The trial court set aside the verdict in defendant's

favor .and granted a new trial on the sole ground that the court thought error was committed in the refusal to give the following instruction (Plaintiff's No. 7) embodying the doctrine of last clear chance:

"The Court instructs the jury that even though you may believe from the evidence in this case that Thomas Hall was guilty of negligence at and before the time and place he was struck by the street car of the defendant company, as shown by the evidence, and that his negligence may have contributed to his injury and death in this case, yet, if you further believe from a preponderance of all the evidence in this case that at and before the time and place where said Thomas Hall was struck by defendent's street car as shown by the evidence herein, the said Thomas Hall was in a situation of imminent danger and peril on defendant's tracks when defendant's street car approached him on said tracks, and that said Thomas Hall was obviously oblivious to his impending danger, and that the motorman operating defendant's street car knew of Thomas Hall's situation of imminent danger and peril on defendant's t r a c k s and knew that said Thomas Hall was obviously oblivious to said danger, or that said motorman knew Thomas Hall's situation on said tracks and under the circumstances in the exercise of reasonable care and prudence should have known and realized Thomas Hall's imminent danger and peril and that he was obviously oblivious of said danger, in time that said motorman could have avoided and prevented injury and death to said Thomas Hall by the use of reasonable care under the circumstances, then T h o m a s Hall's negligence will not excuse or relieve the defendant from liability, and if you believe from a preponderance of the evidence in this case that the defendant's motorman failed to exercise such care and as a proximate result thereof the said Thomas Hall was killed, the defendant, is liable and your verdict should be for the plaintiff in an amount not to exceed $10,000.00, the amount sued for."

But whether the motorman had a sufficient interval of

time after he actually discovered decedent in his position of peril and apparent helplessness, or should have seen decedent's peril and realized his helplessness in time to avert striking him, we need not decide for the reason that plaintiff's instruction No. 7 does not correctly state the last clear chance doctrine as it should be applied to a case involving a trespasser upon the tracks of a railway company at a place other than a public crossing, or on a public street or road. The latter part of the instruction presented to the jury the question whether defendant knew of decedent's situation on the tracks and "under the circumstances *in the exercise of reasonable care and prudence should have known and realized* Thomas Hall's imminent danger and peril and that he was obviously oblivious to such danger." (Italics supplied.) The motorman's duty, as heretofore suggested, to discover Hall on defendant's tracks and to realize decedent's peril and apparent helplessness, was to refrain from wanton and wilful negligence. In *Bralley* v. *Norfolk & Western Ry. Co., supra,* pt. 4 syl., this Court held that in an action against a railway company for the negligent killing of an intoxicated trespasser on the track it was error to instruct the jury that defendant is liable "when, after the negligence in going upon the track, the engineer of the train, by the exercise of ordinary care, could have avoided the injuries to him." The instruction was held to be erroneous in that "it ignores the important element of knowledge, on the part of the engineer or any servant of the company in charge of the train, of the drunkenness of the trespasser." The trial court, in our opinion, was fully justified in its action in refusing to give plaintiff's instruction No. 7.

For the foregoing reasons the judgment of the circuit court in setting aside the verdict for defendant and awarding plaintiff a new trial is reversed, the verdict reinstated, and the case remanded for entry of judgment in defendant's favor on the verdict.

*Judgment reversed; verdict reinstated; remanded with direction.*