433 S.E.2d 559

**Marvin HORAN and Alice Horan, Plaintiffs Below, Appellees,**

v.

**TURNPIKE FORD, INC., Defendant Below, Appellant.**

**No. 21420.**

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1993.

Decided July 19, 1993.

---

Charles E. Hurt and Victor A. Barone, Hurt & Barone, Charleston, for appellant.

Orton A. Jones, Hedges, Jones, Whittier & Hedges, Spencer, for appellees.

PER CURIAM:

This case is before this Court upon an appeal from the April 20, 1992, order of the Circuit Court of Kanawha County, West Virginia. The jury awarded the appellees, Marvin and Alice Horan, $5,000.00 in compensatory damages and $40,000.00 in punitive damages as a result of their purchasing a Ford Tempo automobile from the appellant, Turnpike Ford, Inc. The appellant asks that this Court reverse the decision of the circuit court. The appellant raises four issues on appeal: (1) the trial court erred in not granting the appellant's motions for directed verdict and judgment notwithstanding the verdict, because the appellees failed to prove fraud by clear and convincing evidence and damages proximately resulting from any act or omission of the appellant; (2) the trial court erred in not setting aside the award of punitive damages; (3) the trial court erred in not setting aside the compensatory damages as excessive and not warranted by the evidence; and (4) the trial court erred in giving certain jury instructions of the appellees. This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the judgment of the circuit court is affirmed.

### I

On March 20, 1986, the appellees purchased the automobile from the appellant. The appellees negotiated the sale with Louis Morton, a used car salesman for the appellant and Mrs. Horan's cousin. Mr. Morton informed the appellees that the automobile was used by another salesman to drive to and from work. Thus, the appellees realized they were purchasing a demonstrator automobile with 7,766 miles on it. The parties agreed upon a final purchase price of $8,000.00.

Mr. Morton assured the appellees that they would have a demonstrator warranty on the vehicle. The purpose of a demonstrator warranty, as attested to by the appellant's owner, Alex Parsons, Jr., is to extend the new car warranty period to make up for the time and mileage utilized by a demonstrator vehicle prior to sale.

To complete the necessary paperwork, Mr. Morton directed the appellees to the appellant's business manager, Greg Childress. Mr. Childress testified that he told the appellees that the automobile would be covered by the remainder of the new car warranty.

Shortly after their purchase, the appellees noticed that the automobile began to experience mechanical problems. For example, Mr. Horan testified that the "accelerator was sticking," the tires "were slick" and a windshield wiper "was bad." Mr. Horan took the automobile back to the appellant for the necessary repairs but was informed that the warranty had expired. Mr. Horan drove the automobile home and called the Ford Motor Company office in Cincinnati, Ohio. Approximately twenty minutes later, the Ford representative from Cincinnati called Mr. Horan and advised him to take the automobile back to the appellant.

Mr. Horan returned the automobile to the appellant as advised, and he overheard the new car manager say to a service department employee, "Whatever this man needs on this car, you fix it without question." However, the automobile was not repaired to Mr. Horan's satisfaction, and as a result, the appellees never took the auto-

mobile back to the appellant, or any other Ford dealership, for repairs. Yet, throughout the period of time the appellees owned the automobile, they claim the automobile had various problems, such as: problems with the radiator cooling system, air conditioner, abnormal tire wear, as well as minor other problems.

In early or mid–1987, Mr. Horan discovered, in the automobile's glove box, insurance papers indicating that the automobile had been placed with the West Virginia University Foundation, Inc., in conjunction with the West Virginia University Athletic Department. Further investigation into the matter revealed that the appellant participated in what was known as the "Wheels Club." The club is actually an arrangement in which state auto dealerships furnish new automobiles to West Virginia University coaches. A coach may put up to 6,000 miles on an automobile before the automobile is put up for public sale by the respective dealer, at a reduced price and sold as a demonstrator. In return, the automobile dealers get free season tickets for basketball and football games, free parking, a luncheon before the games and their picture in the game program. It should be noted that neither Mr. Morton nor Mr. Childress was aware that the appellees' automobile had been used by a coach as part of the Wheels Club. Consequently, these two men were dismissed from this action.

While the West Virginia University Athletic Department had use of the automobile, an assistant football coach who was driving the automobile on January 25, 1985, became involved in a collision which resulted in $797.97 in damages. The payment for the repairs was authorized by Jerry Hurst, who was the general manager for the appellant at the time. Expert testimony by Jeff Steindler, a mechanical engineer, on behalf of the appellant, confirmed the fact that the repairs were properly done and there was no structural damage to the automobile. The appellees' expert witness, David Orringer, a forensic consultant in automobile mechanics, testified that there were two indicators that the automo-

bile had been in a collision: visually, he noticed the mismatch of the paint, and structurally, he noticed that the automobile needed a front-end alignment.

In April of 1990, the appellees traded in the automobile and received approximately $1,200.00 for it. At the time of the trade-in, the automobile had approximately 91,000 miles on it. The fact that the appellees continued to use the automobile and put between 83,000 to 84,000 miles on it causes this Court some concern; however, the jury was made aware of this fact and still found for the appellees.

Mr. Orringer, the appellees' expert, testified that because the automobile had been in a collision, its value would be diminished by $300.00 to $500.00. However, Mr. Orringer also stated that the prior collision becomes more of a concern in terms of buyer perception rather than diminution of financial value. Mr. Steindler, the appellant's expert, testified that the repair work done in 1985 would have no effect on the value of the automobile at the time of the trade-in, in 1990.

In 1988, after the appellees had filed this action in March of 1987, the appellant made an offer of judgment[1] whereby the appellant offered to rescind the sale and refund the full purchase price to the appellees. The offer of judgment was not accepted. Mr. Horan testified that he had never seen or been informed of the offer of judgment. The parties, however, stipulated that Richard Frum, the appellees' counsel of record when the offer was made, would testify that an offer was communicated to the appellees and it was not accepted.[2]

On January 15, 1992, the jury found in favor of the appellees and awarded the appellees $5,000.00 in compensatory damages and $40,000.00 in punitive damages.

The appellant timely moved for a new trial, judgment notwithstanding the verdict and for remittitur of damages. On April 20, 1992, the trial court denied the appel-

lant's motions and entered an order upholding the jury's verdict.

It is from the April 20, 1992, order that the appellant appeals to this Court.

## II

The appellant's first contention is that the trial court erred in not granting the appellant's motions for directed verdict and judgment notwithstanding the verdict, because the appellees failed to prove fraud by clear and convincing evidence and damages proximately resulting from any act or omission of the appellant.

In syllabus point 1 of *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981), this Court enumerated the following elements of fraud:

> The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.' *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737[, 738] (1927).

With regard to the above-mentioned elements, it is clear from the evidence before us that the appellant was involved in an ongoing program of lending automobiles to the West Virginia University Athletic Department; however, this information was not made available to the appellant's salesman or to the customer. Mr. Parsons testified that a form should be on file outlining the automobile's history if it has "demonstrator" status. Mr. Parsons also testified that salesmen do not have access to the files. Mr. Parsons admitted that someone in management should have known about the damages to the vehicle and disclosed the information to the appellees prior to purchase. The appellant refers to this as an inadvertent omission attributable to lack of intra-corporate communication. The ap-

---

1. *See W.Va.R.Civ.P.* 68.

2. The document setting forth the offer of judgment was entered into evidence as appellant's

exhibit number three. Therefore, the jury was made aware of the fact that the appellant made an offer to settle the case with the appellees.

pellees refer to it as fraud. The jury obviously agreed with the appellees.

Mr. Morton testified that to his knowledge, only Mr. Whaples, another salesman, had used the automobile and that was the information Mr. Morton conveyed to the appellees. Mr. Childress also testified that he had no knowledge of the automobile being used as part of the Wheels Club. Mr. Childress further testified that had he known that the automobile had been in a collision and damaged, he would have a duty to reveal this information to the customer.

Furthermore, it is obvious that the appellees relied upon the representations of the appellant. Mr. Horan testified that his wife and he were looking for a new automobile, and they would have never purchased the automobile had they known that the automobile had been used by West Virginia University and wrecked. As a result of the unknown, the appellees assert they got an automobile with multiple problems and diminished value.

The evidence herein satisfies the elements of fraud pursuant to *Lengyel, supra.* We, therefore, are of the opinion that the appellees established by clear and convincing evidence that the appellant committed fraud upon the appellees by making false representations and failing to disclose other information regarding the purchase of the automobile.

■ The appellant's second point of contention is that the trial court erred in not setting aside the punitive damages award. Specifically, the appellant argues that the trial court did not follow this Court's instructions regarding the explanation of punitive damages to a jury as found in *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991).

As the appellees correctly point out, the appellant made no objection to the appellees' jury instruction on punitive damages. The appellees further point out the fact that the appellant did not offer a jury instruction based upon *Garnes.* The appellant argues that because the opinion was filed on December 5, 1991, appellant's counsel did not become aware of the *Garnes*

decision until after the conclusion of the trial. It was not until the post-trial proceedings that the appellant made the trial court aware of the *Garnes* decision. We do not find the appellant's argument persuasive.

■ We stated in syllabus point 1 of *Roberts v. Powell*, 157 W.Va. 199, 207 S.E.2d 123 (1973): "A party may only assign error to the giving of instructions if he objects thereto before arguments to the jury are begun stating distinctly the matter to which he objects and the grounds of his objection." · *See also W.Va.R.Civ.P.* 51. In applying this rule of law to the facts in this case, it is clear from the record that the appellant made no objection to the appellees' punitive damages instruction, and moreover, the appellant did not offer their own punitive damages instruction. Therefore, since the *Garnes* issue was not timely raised at the trial court level, it is not controlling on appeal.

■ The appellant's third point of contention is that the trial court erred in not setting aside the compensatory damages as excessive and not warranted by the evidence.

■ This Court, in syllabus point 4 of *Pote v. Jarrell*, 186 W.Va. 369, 412 S.E.2d 770 (1991), once again recognized that:

' "In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syllabus Point 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1984).' Syl. pt. 1, *Pinnacle Mining v. Duncan Aircraft Sales*, 182 W.Va. 307, 387 S.E.2d 542 (1989).

It is unclear from the record how the jury finally arrived at $5,000.00 in compen-

satory damages. However, the jury was presented with expert testimony on the difference in value of the automobile if it had been in a collision versus if it had not been damaged, and the difference in value if the automobile had a warranty versus no warranty. The issues in this case were properly before the jury, sufficient evidence was presented, and the jury, after weighing the evidence, found in favor of the Horans.

Finally, the appellant contends that the trial court erred in giving certain jury instructions of the appellees. The appellant more specifically argues that the appellees' instructions were unsupported by the evidence and failed to state the law correctly.

The three jury instructions in dispute are summarized as follows:

■ (a) Appellees' instruction number five provided that it is an unlawful deceptive act or practice to represent goods as new or original if they are deteriorated, altered, reconditioned, reclaimed, used or second-hand. If the jury found that the appellant made such representation to the appellees, and as a result they suffered a loss, then the appellees were entitled to recover their actual damages. *See W.Va. Code,* 46A–6–102(f)(6) [1988], 46A–6–104 [1974] and 46A–6–106(1) [1974].

With respect to appellees' instruction number five, the appellees offered the instruction because the automobile had been represented to the appellees as a new car[3] but actually, unknown to the appellees, it had been used by a football coach and damaged. The appellant objected to the instruction and argued that the automobile was a demonstrator and there was no evidence presented which suggested that the car had been deteriorated, altered, conditioned, reclaimed, used, or second-hand.

We believe the evidence elicited at trial supports such an instruction. For example, Mr. Horan testified that Mr. Morton told the couple that the appellant could sell the automobile as a "new car." Mr. Childress also testified that "in all classifications it is a new vehicle." Mr. Horan further testified that the automobile, when he first saw it, was sitting in the appellant's new car lot.

■ (b) Appellees' instruction number eight defined an express warranty and gave examples of what constitutes an express warranty. If the jury found that the appellant created an express warranty, and the appellees suffered damages as a result of a breach of such warranty, then the jury could have found in favor of the appellees. *See W.Va.Code,* 46–2–313 [1963]; *W.Va. Code,* 46–2–714(1) [1963]; *Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.,* 165 W.Va. 292, 300–01, 268 S.E.2d 886, 892 (1980).

In regard to appellees' instruction number eight, the appellees offered the instruction because the automobile was expressly warranted through the statements and representations of the appellant and the appellant's employees, as a new car and sold as such. The appellant objected and argued there was no evidence that anybody said or represented anything. Quite the contrary occurred as it is clear from the trial transcript that Mr. Horan believed that the appellees were buying a new automobile with a new car warranty. Mr. Horan was assured by Mr. Morton and Mr. Childress that the automobile would be covered by a demonstrator warranty or the remainder of the new car warranty. Mr. Horan testified that after Mr. Childress explained the automobile's warranty, his wife and he felt no need to extend the warranty coverage any

---

**3.** Mr. Childress testified as to the difference between the terminology of a new car versus a used car. A new car, as attested to by Mr. Childress, is an automobile that has never been titled in any state; and, a used car is an automobile with miles or no miles that has been titled to an individual or a corporation. Mr. Childress further testified that a demonstrator is an automobile that is assigned to a particular person or persons and is driven for a period of time.

Mr. Parsons testified that this particular automobile was not titled at the time it was sold to the appellees. Mr. Parsons admitted that had the automobile been titled to West Virginia University, during its participation in the Wheels Club, and then retitled to the appellant, then the automobile would have been considered a "used" car.

**628**

further. Based upon the foregoing testimony and the methods of creating an express warranty as provided in *W.Va.Code*, 46–2–313 [1963], we find that there was sufficient evidence to support the instruction.

■ (c) Appellees' instruction number fourteen outlined the measure of damages to compensate the appellees for their losses, if the jury found that the appellees proved one or more of the following claims against the appellant: fraud, misrepresentation or concealment, unfair or deceptive acts or practices. The measure of damages is the difference between the value of the vehicle as warranted or represented and the value of the vehicle in its actual condition at the time of the transaction, plus incidental and consequential damages. *See W.Va.Code*, 46–2–714 [1963], 46–2–715 [1963], 46A–6–106 [1974].

Finally, with regard to appellees' instruction number fourteen, the appellees offered the instruction and contended that the instruction provided the appropriate measure of damages for nonconformity of goods. The appellees argued that there was a difference in value between what was represented to the appellees at the time of purchase and what they actually received. The appellant objected and primarily argued before the trial court that the suggested measure of damages was incorrect. The appellant asserts that *W.Va.Code*, 46–2–711 [1963] sets forth the remedies for a buyer, or as in this case, the appellees. If the buyer rejects or justifiably revokes acceptance, as argued by the appellant, then he may have certain remedies. Thus, the appellant claims that since the appellees continued to use the automobile, they are not entitled to recover any damages from the appellant.

■ However, *W.Va.Code*, 46–2–714 [1963], as raised by the appellees, deals with the "remedies available to the buyer after the goods have been accepted and the time for revocation of acceptance has gone by." Appellees' instruction number fourteen correctly states the measure of damages as provided, in relevant part, in *W.Va. Code*, 46–2–714(2) and (3) [1963]:

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted[.]

(3) In a proper case any incidental and consequential damages [under *W.Va. Code*, 46–2–715 [1963]] may also be recovered.

This Court has held that "an instruction is proper if it is a correct statement of the law and if there is sufficient evidence offered at trial to support it." Syllabus point 5, *Jenrett v. Smith*, 173 W.Va. 325, 315 S.E.2d 583 (1983). In the instant case, we hold, after a careful analysis of each instruction, the evidence and the law, the challenged instructions were correct statements of the law, and the appellees introduced sufficient evidence to warrant such instructions.

Thus, for the reasons set forth herein, there is no reversible error in this case. Therefore, this Court is of the opinion that the final order of the Circuit Court of Kanawha County should be affirmed.

Affirmed.