475 S.E.2d 363

Jeanette CRAIGHEAD, as Administratrix of the Estate of Steven S. Craighead, Plaintiff Below, Appellee,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, a Corporation, and B.R. Turner, Defendants Below, Appellants.

No. 22946.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 1996.

Decided July 5, 1996.

Wade T. Watson, Brumfield and Watson, Bluefield, for Appellants.

J. Franklin Long, Katherine L. Dooley, Bluefield, for Appellee.

ALBRIGHT, Justice:

Appellants, Norfolk and Western Railway Company and B.R. Turner (defendants below), appeal a $657,100.50 judgment entered against them by the Circuit Court of McDowell County in a wrongful death action that arose after Steven Craighead was struck and killed by a Norfolk and Western train. Appellants contend that the circuit court erred by giving instructions that (1) permitted the jury to apply a duty of ordinary care when the circumstances required a finding of willful and wanton conduct; (2) improperly imposed on appellants a duty of ordinary care to discover a trespasser on its tracks at a place other than a public crossing; and (3) permitted the jury to find that appellants were negligent under circumstances that were not supported by the evidence. Appellants further contend that the circuit court erred by allowing expert opinion testimony regarding appellant's negligence and by failing to exclude speculative evidence of future lost earnings. We find that the instructions were proper and were supported by the evidence, that appellants waived error on the issue of the expert opinion testimony, and that the evidence of future lost earnings was properly allowed. Accordingly, we affirm.

The accident that resulted in Steven Craighead's death occurred in close proximity to railroad milepost 389,[1] which is near Landgraff, West Virginia, a rural community with residences located beside railroad tracks owned by appellant Norfolk and Western Railway Company ("N & W"). Milepost 389 is located approximately 711 feet to the east of the Landgraff railroad crossing. The tracks in this area run upgrade to the east of Landgraff and curve gradually to the north. According to the evidence presented at trial, for approximately twenty years many of the residents of Landgraff have regularly walked on the N & W tracks and right-of-way in the Landgraff area with the knowledge of N & W employees. On the afternoon of November 12, 1991, twenty-one-year-old Steven Craighead was walking east on the north track of the double-track line near Landgraff, when he was approached by an eastbound train traveling on the south track. The eastbound train was made up of pulling diesels on the head end, or front, followed by approximately ninety-seven cars and pusher diesels on the rear end. The total length of the train was roughly one mile. The engineer of the eastbound train testified that he observed Steven Craighead walking at the head of the ties, which, according to one of the experts who testified, was the east end of the ties. Upon seeing Steven Craighead on the track ahead, the train engineer blew his

---

1. A railroad "milepost," like its cousin on a highway, is a numbered post or sign marking the distance of one mile from the last such post.

horn. Steven responded by moving to the north, off of the track and onto the ballast, approximately eight to ten feet away from the rails.

Shortly after the eastbound train began to pass Steven, the head end of the train encountered a westbound consist[2] of three engines and no cars traveling on the other track. Appellant B.R. Turner, engineer of the westbound consist, was operating the consist without a crew, apparently from the lead engine. The lead engine[3] of the westbound consist was in a long-nose-forward configuration. Long nose forward refers to an engine that is traveling in a direction which places the cab toward the back, with the longest portion of the engine located in front of the cab. Unlike an automobile, train engines are designed to operate with the same efficiency while traveling either forward or backward. However, the cab, where the engineer is located, sits nearer to one end of the engine. According to the record here, engineer Turner was located on the right or northerly side of the engine and approximately sixty feet from the front of it. As the westbound consist moved past, the engineer of the eastbound train radioed engineer Turner, of the westbound consist, to notify Turner that his consist "looked good."[4] However, the eastbound engineer did not inform engineer Turner that someone had just been seen on the tracks ahead of Turner.

As the westbound consist continued, traveling downgrade at twenty-six miles-per-hour,[5] it approached milepost 389 and entered a gradual left-hand or northerly curve. Due to the combination of the long-nose-forward configuration and the left-hand curve, engineer Turner was unable to see the track ahead of him for a distance of approximately 100 feet. Apparently, Steven Craighead had returned to a position on or near

the northern track and was walking toward the westbound consist. At a point near milepost 389, and within the left-hand curve, the right-front side of the lead engine of the Turner consist struck Steven Craighead. Engineer Turner heard a sound and saw Steven fall away to the right side, or north side, of the tracks. The eastbound train was still passing the westbound consist when Steven was struck. Engineer Turner stopped the westbound consist and radioed for help. Steven Craighead was transported to a hospital, where he died of head injuries the following day.

Steven Craighead's mother, appellee Jeanette Craighead (plaintiff below), subsequently filed this wrongful death action as Administratrix of the Estate of Steven S. Craighead, deceased. The suit named as defendants N & W, B.R. Turner (the engineer of the westbound consist), and three N & W supervisory employees.

At the end of appellee's evidence, the circuit court denied appellants' motion for a directed verdict in favor of all defendants. Appellants renewed their motion at the end of all the evidence. The court granted the motion with regard to the three supervisory N & W employees, but denied it with regard to N & W and engineer Turner. Subsequently, the jury returned a verdict finding decedent, Steven Craighead, 30% negligent in proximately causing the subject accident, and finding appellants 70% negligent. In addition, the jury determined appellee's damages to be $938,715.00. The court entered judgment against appellants for their portion of the damages, which equaled $657,100.50, plus jury costs. Appellants then filed a motion for judgment in accordance with the motion for directed verdict, or in the alternative, for a new trial. The circuit court denied appellants' motion by order dated September

2. A consist is a "makeup or composition (as of coal sizes or a railroad train) by classes, types, or grades and arrangement." *Webster's Third New International Dictionary of the English Language Unabridged* 484 (1970). For the purpose of clarity, throughout this opinion we use the term "consist" to identify the westbound train that struck Steven Craighead, and the term "train" to identify the eastbound train that first encountered Steven on the tracks.

3. "Lead engine" is the first engine forming the front end of the train or being the engine nearest the front end of the train.

4. The engineer of the eastbound train testified that it is a common practice for N & W engineers to inspect passing trains.

5. N & W had established a track speed in this area of thirty miles-per-hour.

12, 1994. It is from this order that appellants appeal.

## JURY INSTRUCTIONS

We first address appellants' contention that the court erred in giving certain instructions. Appellants contend the court committed error in giving Plaintiff's Instruction No. 11 over their objection, and thereby erroneously instructing the jury that appellants could be deemed liable upon a finding that appellants failed to exercise reasonable care. Appellants assert that Steven Craighead, the decedent, was a trespasser when he was struck, and, therefore, N & W was liable only if it willfully or wantonly injured him.

■ Generally, "[t]he owner or possessor of property does not owe trespassers a duty of ordinary care. With regard to a trespasser, a possessor of property only need refrain from wilful or wanton injury." Syl. pt. 2, *Huffman v. Appalachian Power Co.*, 187 W.Va. 1, 415 S.E.2d 145 (1991). However, Plaintiff's Instruction No. 11 was based upon an exception to the general rule set forth in the Restatement (Second) of Torts § 335 (1964), and adopted by this Court in *Huffman*:

> For a trespasser to establish liability against the possessor of property who has created or maintains a highly dangerous condition or instrumentality upon the property, the following conditions must be met: (1) the possessor must know, or from facts within his knowledge should know, that trespassers constantly intrude in the area where the dangerous condition is located; (2) the possessor must be aware that the condition is likely to cause serious bodily injury or death to such trespassers; (3) the condition must be such that the possessor has reason to believe trespassers will not discover it; and (4), in that event, the possessor must have failed to exercise reasonable care to adequately warn the trespassers of the condition.

*Id.* at syl. pt. 4.

■ Appellants do not dispute that Plaintiff's Instruction No. 11 is a correct statement of the law. Instead, they assert that the evidence presented in this case was insufficient to support the instruction. More specifically, appellants assert that appellee failed to present evidence to indicate that the condition or instrumentality was such that N & W had reason to believe that trespassers would not discover it. We disagree.

■ After a careful review of the record, we conclude that there was sufficient evidence to support Plaintiff's Instruction No. 11. " ' "If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory." Syllabus Point 2, *Snedeker v. Rulong*, 69 W.Va. 223, 71 S.E. 180 (1911).' Syllabus point 4, *Catlett v. MacQueen*, 180 W.Va. 6, 375 S.E.2d 184 (1988)." Syl. pt. 6, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert. denied*, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994).

The circumstances of this case are unique. The evidence established that residents of Landgraff had regularly walked on or near the N & W tracks for a period of at least twenty years. Consequently, we believe that a jury would be warranted in concluding that appellants knew, or should have known, that the residents of Landgraff were accustomed to walking on or near its tracks. The evidence further established that, on the day of the accident, a long eastbound train observed Steven Craighead on the tracks and blew its horn to warn him off the tracks. Although Steven moved off of the tracks to the north, we believe it was foreseeable that he would return to a position on or near the northerly tracks, on which the westbound consist was traveling. Many of the residents were accustomed to walking along the tracks, and it appears that Steven could walk there upon a more even surface. When the eastbound train encountered the westbound consist, the eastbound engineer communicated a short message to engineer Turner, but failed to notify Turner that an individual had been discovered on the tracks ahead. This is especially noteworthy because the westbound consist had only one crew member and was traveling into a curve in a long-nose-forward configuration, making it impossible for the

engineer to see the tracks for some distance in front of him.[6] Moreover, the engineer of the eastbound train testified that he had worked as an engineer since 1968 and had traveled through the Landgraff area hundreds of times. Hence, it is reasonable to expect that he was aware of the vision problems engineer Turner would experience traveling long nose forward through the curves ahead. There was additional evidence presented that the eastbound train created substantial noise as it traveled upgrade, which tended to mask the less noisy westbound consist that was moving downgrade. Consequently, we find sufficient evidence was presented to allow the jury to determine the question of whether a dangerous condition or instrumentality existed that N & W had reason to believe would not be discovered by decedent, Steven Craighead.[7]

■ " ' " 'Where [in a trial by jury] there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so. *McAllister v. Weirton Hospital Co.*, 173 W.Va. 75, 81, 312 S.E.2d 738, 744 (1983) (citations omitted).' Syl. pt. 2, *Brammer v. Taylor*, 175 W.Va. 728, 338 S.E.2d 207 (1985)." Syllabus Point 2, *Ventura v. Winegardner*, 178 W.Va. 82, 357 S.E.2d 764

(1987).' Syl. pt. 6, *King v. Kayak Manufacturing Corporation*, 182 W.Va. 276, 387 S.E.2d 511 (1989)." Syl. pt. 8, *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

■ Appellants further contend that Plaintiff's Instruction Nos. 2 and 4 were incorrect statements of law.[8] Appellants assert that the instructions erroneously informed the jury that a railroad owes a duty to a trespasser to discover him on the tracks at a location other than a public crossing. Appellants rely on the undisputed evidence that engineer Turner, of the westbound consist that struck decedent Craighead, did not and could not discover Craighead on the tracks due to the curvature of the track and the configuration of the engine.[9]

■ The general rule is " ' " [o]ne not in the employ of a railway company, using its tracks as a walk way over a portion thereof which pedestrians are accustomed to use for such purpose, but not at a public crossing, is at most a mere licensee, and such railway company owes to him no higher duty than it owes to a trespasser." Pt. 1, Syl., *Blagg, Adm'r v. Baltimore and Ohio Railroad Company*, 83 W.Va. 449, 98 S.E. 526. Such duty is no higher than not wantonly or wilfully to

6. Testimony presented at trial indicated that an engineer operating an engine in a long-nose-forward configuration would not be able to see the tracks directly in front of the engine for a distance of approximately 100 feet.

7. The jury was also instructed that Steven Craighead, while walking upon the tracks, had a duty to effectively use his eyes and ears to discover any signs of danger.

8. Plaintiff's Instruction No. 2 states:

A railroad should use all reasonable exertions to avoid inflicting death or injury to any pedestrian discovered in imminent danger on or near its tracks. If the pedestrian is in a position of peril on the railroad right-of-way, it is the duty of the train engineer to take such reasonable care and precautions for the pedestrian's safety by signal or otherwise, as the circumstances reasonably permit.

Plaintiff's Instruction No. 4 states:

When a person running a railroad train discovers a pedestrian in imminent danger on or near the track, that person must use all reason-

ably available exertions to avoid inflicting death or injury to the pedestrian. Failure to do so in such case may constitute negligence.

If you find that the train engineer for the Norfolk and Western Railway Company discovered, or in the exercise of due diligence should have discovered Steven Craighead on or dangerously near the Landgraff railroad tracks on November 12, 1991, immediately before his fatal injury, and that Steven Craighead was in a position of peril and imminent danger, then, the railroad had a duty to use all reasonably available exertions to avoid his injury and death.

If the railroad did not use such reasonably available exertions, then the N and W Railway Company may be found negligent in this case.

9. Appellants cite case law from Virginia, Alabama and Kansas for the proposition that N & W owed no duty to operate its equipment or employ extra personnel to discover the presence of a trespasser upon its tracks. Inasmuch as appellants cite no West Virginia cases to support this proposition, and we are aware of no such cases, we decline to adopt this rule.

injure such pedestrian.' *Hall Adm'x v. Monongahela West Penn Public Service Co.,* 128 W.Va. 547, Pt. 1, Syl., 37 S.E.2d 471." Syllabus point 2, *Stokey v. Norfolk & Western Ry. Co.,* 132 W.Va. 771, 55 S.E.2d 102 (1949). However, this Court has also held that "[a] railroad must exercise ordinary care, commensurate with the risk of injury, in operating its train at a place where persons may be expected to be on the track." *Payne v. Virginian Ry. Co.,* 131 W.Va. 767, 778, 51 S.E.2d 514, 520 (1948) (quoting syl. pt. 2, *Barron v. Baltimore & O.R. Co.,* 116 W.Va. 21, 178 S.E. 277 (1935)).[10]

■ In this case there was evidence that for at least twenty years the residents of Landgraff had regularly walked upon the tracks and right of way with N & W's knowledge. Under these circumstances, we find that a duty to keep a reasonable lookout for pedestrians in the Landgraff area was commensurate with the risk of injury that existed in that area. Moreover, it is important to note that the decedent in this case had been discovered on the tracks by the engineer of the eastbound train. After a trespasser or licensee is discovered upon railroad tracks, railway employees must use reasonable care to avoid injuring such trespasser or licensee. *See Ballard v. Charleston Interurban R. Co.,* 113 W.Va. 660, 169 S.E. 524 (1933); *Robertson v. Coal & Coke Ry. Co.,* 87 W.Va. 106, 104 S.E. 615 (1920); *Cheek v. Director General of Railroads,* 87 W.Va. 321, 104 S.E. 618 (1920); *Blagg v. Baltimore & O.R. Co.,* 83 W.Va. 449, 98 S.E. 526 (1919).

Appellants argue that, although the engineer of the eastbound train discovered the decedent, the engineer fulfilled his duty when he blew the horn to warn decedent off of the track and observed decedent move onto the ballast. Appellants assert that when the decedent moved onto the ballast where he could not be struck by a passing train, he was no longer in a position of peril as a matter of law. Thus, appellee asserts Instruction Nos. 2 and 4 improperly allowed the jury to find that Steven Craighead should have been discovered in peril or imminent danger by appellants.

■ We have held "[t]hough a trespasser on a railway right of way may not be directly on the track, yet if when the train reaches him he will be in a position of peril therefrom, it is the duty of the engineer to take such precaution for his safety by signal or otherwise as the circumstances reasonably dictate." Syl. pt. 3, *Stuck v. Kanawha & Michigan Railway Co.,* 76 W.Va. 453, 86 S.E. 13 (1915).[11]

■ Because we believe it was reasonably foreseeable that the decedent would return to a position on or near the tracks, we believe that reasonable men may draw different conclusions from the undisputed facts regarding the decedent's position. " 'It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them.' Syllabus point 1, *Evans v. Farmer,* 148 W.Va. 142, 133 S.E.2d 710 (1963)." Syl. pt. 2, *Koontz v. Long,* 181 W.Va. 800, 384 S.E.2d 837 (1989). Therefore, we find that the question of whether Steven Craighead was in a position of peril was a proper question for the jury.

---

10. This Court, in *Connelly v. Virginian Ry. Co.,* 124 W.Va. 254, 20 S.E.2d 885 (1942) explained that syllabus point 2 of *Barron v. Baltimore* must be read in connection with the facts of each case, and thus should not be accepted as the statement of a general principal of law. The *Connelly* Court appeared to be concerned that acceptance of the syllabus point as a general principal of law would preclude a directed verdict in any case where an individual was injured on the railroad track, because there would always be a question of fact regarding the risk of injury. The Court observed that this result was obviously not intended by the *Barron* Court, since the ruling in *Barron v. Baltimore* affirmed the directed verdict entered by the lower court.

11. In *Robertson v. Coal & Coke Railway Co.,* 87 W.Va. 106, 104 S.E. 615 (1920), this Court held that *Stuck* applied only to cases involving children, provided that the presence of an adult trespasser was not discovered by a railway company's employees in time to avoid injury. Because the decedent, Steven Craighead, was discovered by N & W employees in time to avoid injury, we find the *Stuck* holding applicable to this case.

" 'An instruction is proper if it is a correct statement of the law and if there is sufficient evidence offered at trial to support it.' Syllabus point 5, *Jenrett v. Smith,* 173 W.Va. 325, 315 S.E.2d 583 (1983)." Syl. pt. 4, *Horan v. Turnpike Ford, Inc.,* 189 W.Va. 621, 433 S.E.2d 559 (1993). "It will be presumed that a trial court acted correctly in giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions given were prejudicially erroneous or that the instructions refused were correct and should have been given." Syl. Pt. 1, *State v. Turner,* 137 W.Va. 122, 70 S.E.2d 249 (1952). We find that Plaintiff's Instruction Nos. 11, 2, and 4 were correct statements of the law supported by sufficient evidence, and thus they were correctly given.

## EXPERT TESTIMONY

We turn next to the issues raised by appellants regarding the expert testimony offered at trial. Appellee offered two expert witnesses, Mr. B.E. "Sam" Kramer, a railroad accident investigator and consultant, and Dr. Vaughn P. Adams, Jr., a professional engineer specializing in safety engineering, including accident investigation, accident analysis, and failure analysis. Mr. Kramer's testimony was adduced by reading his deposition, and Dr. Adams testified in person. The testimony of both witnesses related to appellants' alleged negligent actions leading up to the accident.

Appellants contend that the court erred in assessing the relevancy and reliability of the expert opinion testimony offered by Mr. Kramer and Dr. Adams in accordance with Rule 702 of the West Virginia Rules of Evidence and *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993), prior to admitting the experts' testimony that appellants were negligent, and by failing to exclude such testimony as requested by appellants' motion-in-limine. Appellants maintain that Mr. Kram-

er should not have been permitted to offer the opinion that they were negligent because "negligence" is a legal term of art. Moreover, appellants assert that Mr. Kramer's testimony revealed that he did not understand the legal concepts of "duty" and "negligence." Finally, appellants contend that Mr. Kramer's opinions were prejudicial and constituted reversible error because: (a) appellee's burden of proof was to show that appellants' conduct was willful and wanton; (b) Mr. Kramer failed to define negligence as used in his opinion, and the reasons he gave to support his opinion were contrary to legal duties defined in the law;[12] and (c) Mr. Kramer's opinion that appellants were negligent was an inadmissible legal conclusion.

Appellee submits that the allowance of the testimony of expert witnesses is a matter solely within the discretion of the trial court, and in the case at bar the trial court properly assessed the competence of the experts and their assistance to the trier of fact. Appellee further submits that appellants failed to timely object to the experts' opinion testimony concerning legal conclusions, even though appellants were given adequate opportunity by the court.

Prior to trial, appellants filed a motion-in-limine to exclude the testimony of both experts. The trial court denied the motion and instructed defense counsel that he would be permitted to renew his objection during the expert testimony with regard to any particular item or category of items that appeared to be objectionable for a specific reason. Defense counsel made no objection to that ruling by the court.

Just prior to Kramer's deposition being read to the jury, the court commented that defense counsel may have objections to certain items contained in the Kramer deposition. The court asked defense counsel if he wanted to speak to any such objections. In addition, the court noted for the record that

---

12. Appellants assert that the following opinions given by Mr. Kramer are not supported by any legal duty: (a) the engineer of the eastbound train failed to notify engineer Turner by radio that he had observed a pedestrian in close proximity to the track; (b) appellants should not have operated their train in a long-nose forward con-

figuration; (c) appellants should have provided sufficient personnel to discover the presence of a trespasser on the track; (d) appellants should have discouraged pedestrians from using the right-of-way by policing the right-of-way, posting "no trespassing" signs, or fencing the right-of-way.

it had already ruled on appellants' motion-in-limine, and thus there was "no need to go back into ground that [was] already covered." Although the court stated that counsel's continuing objection to the court's ruling was noted, it inquired of counsel whether there were any specific items that needed to be addressed. Defense counsel objected to only two specific portions of testimony, neither of which involved testimony regarding appellants' negligence. After defense counsel indicated that he had no other major objections, the court stated that any other objections could be made during the course of the reading of the deposition. Defense counsel made one general objection during the reading of Mr. Kramer's deposition testimony.[13]

■ Thus, it appears from the record that appellants failed to initially object to the court's ruling on their motion-in-limine and, although expressly offered the opportunity to object both prior to and during the reading of the deposition, appellants failed to make any specific objections to the "negligence" evidence that was offered and made only one general objection. "General objections are not favored under W.Va.R.Evid. 103(a)(1)." *Hanshaw v. Hanshaw*, 180 W.Va. 478, 479 n. 1, 377 S.E.2d 470, 471 n. 1 (1988). Moreover, this Court has recognized:

> A *general objection overruled* [italics in original] is of small value to the objector on appeal.... The rationale of this rule is that the proponent of the evidence should be given an opportunity to meet the objection by reframing the question, laying the necessary foundation, or by other means. A general objection does not offer him this opportunity. Thus, the objector in most instances will lose his rights on appeal by failing to take further action after his general objection has been overruled.

*State v. McFarland*, 175 W.Va. 205, 220, 332 S.E.2d 217, 232 (1985) (quoting F. Cleckley, *Handbook On Evidence for West Virginia Lawyers* § 18.B.3.c(2) at 91 (1978)).

The appellant in *McFarland* made three general objections and a general motion to strike during expert testimony offered by the State. The trial court overruled each of the objections and denied the motion. On appeal, appellant complained that the State failed to establish that the expert understood the legal meaning of the terms malice and premeditation and that the expert was being asked to draw a conclusion on the ultimate facts in issue. This Court held that by failing to make specific objections at trial, appellant denied the State the opportunity to meet the objections. Similarly, in the instant case appellants' failure to make specific objections, before Mr. Kramer's deposition was read to the jury or during its reading, deprived appellee of the opportunity to take corrective action with regard to the "negligence" evidence. Consequently, we find that appellants have waived their right to appeal on the issue of Mr. Kramer's "negligence" testimony.

■ In their brief, appellants set forth neither an argument regarding their claim that the court erred in allowing Dr. Adams' testimony, nor a discussion of the evidence that would support such claim. Thus, we find this assignment of error has been waived. "[A]ssignments of error which are not argued in the briefs will be deemed waived." *Dawson v. Allstate Ins. Co.*, 189 W.Va. 557, 564, 433 S.E.2d 268, 275 (1993) (per curiam) (quoting Syllabus point 3 of *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974) *overruled on other grounds, O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977)).

## FUTURE LOST EARNINGS

■ As noted, appellants assign as error the admission of evidence related to decedent's future lost earnings because it was speculative. The evidence presented at trial regarding decedent's work history indicated that he had worked for a construction company for approximately six to nine months and

---

**13.** Counsel objected, without stating the basis for his objection, when Mr. Kramer was asked whether he had an opinion as to what acts or omissions to act caused Steven Craighead to be injured. The court overruled the objection, and Mr. Kramer answered that, in his opinion, the causal factor was that the two engineers did not comply with the operating rules in the discharge of their duties.

was subsequently unemployed for a period of eight to eleven months prior to his death. The evidence further revealed that decedent was interested in enlisting in the military, frequently visited the recruiting office in Welch, West Virginia, and was encouraged by his mother to join the military. Decedent had taken the Army admission test and had earned a score that placed him in category four. According to the testimony of Sergeant Wesley Bennett, a recruiter for the United States Army, the Army was not accepting enlistees at category four from the Welch recruiting office at the time decedent took the test. However, Sergeant Bennett testified that six months later, and after decedent's death, recruiting was down and the Army began accepting enlistees at category four. Thus, decedent could have enlisted with the score he had obtained on the test.

Mr. Robert Williams, a vocational counselor who testified on behalf of appellee, opined that the decedent would have entered the military and remained in the military for 20 years. He based his opinion, in part, upon decedent's desire to join the military and the fact that decedent had relatives who had joined the military. In addition, Mr. Williams observed that the military is a strong vocational choice for young men living in decedent's regional area who do not go to college. Accordingly, Mr. Williams calculated the decedent's expected earned income based upon a military career.

Dr. Michael L. Brookshire, an economist specializing in labor economics, also testified on appellee's behalf. Dr. Brookshire testified regarding the present value of decedent's future lost earnings. He stated that his calculations were based, in part, upon Mr. Williams' opinion and determination of the decedent's expected earned income. Appellants offered no testimony to controvert the evidence presented by Mr. Williams and Dr. Brookshire.

Appellants assign error to the trial court's failure to exclude the evidence concerning the decedent's future lost earnings given by Mr. Williams and Dr. Brookshire. Appellants assert that the testimony was based upon speculation that the decedent would have joined the United States military or that he would have earned the wages of an average person. Appellants contend that the decedent's future lost earnings were not "proved to a reasonable degree of certainty" as required by *Adkins v. Foster*, 187 W.Va. 730, 421 S.E.2d 271 (1992).

In *Adkins v. Foster, Id.* at 733, 421 S.E.2d at 274, this Court stated that "impairment of earning capacity is a proper element of recovery when two elements have been proven: permanent injury and reasonable degree of certainty of the damages. *Jordan v. Bero*, 158 W.Va. 28, 52, 210 S.E.2d 618, 634 (1974)." *Adkins v. Foster*, however, is a personal injury case dealing with the impairment of earning capacity. The process of determining the extent to which an individual's future earning capacity is impaired is quite different from calculating the amount of future earnings that were lost due to the individual's untimely death. To determine impairment of earning capacity it is necessary to consider, *inter alia*, the extent and permanency of the injury; the type of future employment, if any, in which the injured plaintiff could engage; and the difference between the amount plaintiff would have earned if the injury had not occurred and the amount plaintiff would be able to earn after having suffered the injury.

With regard to the determination of future lost earnings in wrongful death cases, this Court has simply held that "[t]he jury may determine the probable earnings of the deceased in a wrongful death action by considering his age, earning capacity, experience and habits, during his probable lifetime." Syl. pt. 4, *Bowman v. Barnes*, 168 W.Va. 111, 282 S.E.2d 613 (1981). We have reviewed the evidence outlined above and find that appellee met the standard set forth in *Bowman*. Therefore, we conclude that the evidence of decedent's future lost earnings was not unduly speculative and was properly allowed.

For the reasons stated, we affirm the September 12, 1994 order of the Circuit Court of McDowell County.

Affirmed.