IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0666

_____

FILED
**November 18, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WAL-MART STORES EAST, L.P.,
Petitioner

v.

JOHNA DIANE ANKROM,
Respondent

_____

Appeal from the Circuit Court of Wood County, West Virginia
The Honorable Judge John D. Beane
Civil Action No. 15-C-319

AFFIRMED

_____

Submitted: October 13, 2020
Filed: November 18, 2020

Jeffrey M. Wakefield, Esq.
Erica M. Baumgras, Esq.
Mitchell B. Tuggle, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia

Elbert Lin, Esq.
Hunton Andrews Kurth LLP
Richmond, Virginia
Counsel for the Petitioner

James G. Bordas, III, Esq.
Scott S. Blass, Esq.
James B. Stoneking, Esq.
BORDAS & BORDAS, PLLC
Wheeling, West Virginia

Todd S. Wiseman, Esq.
Wiseman Law Firm, PLLC
Vienna, West Virginia
Counsel for the Respondent

Ancil G. Ramey, Esq.
Steptoe & Johnson, PLLC
Huntington, West Virginia
Counsel for Amicus West Virginia
Retailers Association

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD and JUSTICE JENKINS concur in part and dissent in part and reserve the right to file separate opinions.

**SYLLABUS BY THE COURT**

1.      "The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*."  Syllabus Point 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

2.      "When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party."  Syllabus Point 2, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

3.      "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstance of time, place, manner, or person."  Syllabus Point 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W. Va. 511, 23 S.E. 582 (1895).

i

4.      "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken."  Syllabus Point 1, *Parsley v. General Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981).

5.      "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?"  Syllabus Point 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988).

6.      "Proximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence."  Syllabus Point 3, *McCoy v. Cohen*, 149 W. Va. 197, 140 S.E.2d 427 (1965).

7.      " ' "Proximate cause" must be understood to be that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred.' Syllabus Point 3, *Webb v. Sessler*, 135 W.Va. 341, 63 S.E.2d 65 (1950)."  Syllabus Point 4, *Spencer v. McClure*, 217 W. Va. 442, 618 S.E.2d 451 (2005).

8.     " ' " 'An intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.' Syllabus Point 16, *Lester v. Rose*, 147 W.Va. 575, 130 S.E.2d 80 (1963) [*modified on other grounds, State ex rel. Sutton v. Spillers*, 181 W.Va. 376, 382 S.E.2d 570 (1989) ]." Syllabus Point 1, *Perry v. Melton*, 171 W.Va. 397, 299 S.E.2d 8 (1982).' Syl. Pt. 3, *Wehner v. Weinstein*, 191 W.Va. 149, 444 S.E.2d 27 (1994)." Syllabus Point 8, *Harbaugh v. Coffinbarger*, 209 W. Va. 57, 543 S.E.2d 338 (2000).

9.     " 'A tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.' Syl. Pt. 13, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990)." Syllabus Point 9, *Harbaugh v. Coffinbarger*, 209 W. Va. 57, 543 S.E.2d 338 (2000).

10.     " ' " ' "If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory." Syllabus Point 2, *Snedeker v. Rulong*, 69 W.Va. 223, 71 S.E. 180 (1911).' Syllabus Point 4, *Catlett v. MacQueen*, 180 W.Va. 6, 375 S.E.2d 184 (1988)." Syllabus point 6, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert. denied*, 511 U.S.

1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994).' Syllabus point 3, *Craighead v. Norfolk & Western Railway Company*, 197 W.Va. 271, 475 S.E.2d 363, (1996)." Syllabus Point 4, *Coleman v. Sopher*, 201 W. Va. 588, 499 S.E.2d 592 (1997).

11. "A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense." Syllabus Point 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

12. "Injured plaintiffs should not have to forego the collateral source rule merely to recover prejudgment interest." Syllabus Point 13, *Ilosky v. Michelin Tire Corp.*, 172 W. Va. 435, 307 S.E.2d 603 (1983).

13. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

14. "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the

legislation." Syllabus Point 2, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

15. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

WALKER, Justice:

A shoplifter collided with Johna Diane Ankrom in the "action alley" of a Wal-Mart in Parkersburg, West Virginia, in February 2015. Ms. Ankrom was severely injured, sued Wal-Mart Stores East, L.P. (Wal-Mart), and, after a jury trial, was awarded approximately $16.9 million in damages. The jury apportioned thirty percent of the fault for Ms. Ankrom's injuries to Wal-Mart and the remainder to Robert Leist, the shoplifter and third-party defendant. Post-trial, Wal-Mart challenged the jury's findings that it had breached a duty owed to Ms. Ankrom and that Mr. Leist's actions were not the sole proximate cause of her injuries. Wal-Mart also claimed that evidentiary and instructional errors necessitated a new trial. The circuit court denied Wal-Mart's motions. Over Ms. Ankrom's objection, the court entered judgment against each defendant according to its apportioned fault. And, over Wal-Mart's objection, the court granted Ms. Ankrom prejudgment interest on medical expenses.

On appeal, Wal-Mart reprises its arguments in support of its motion for judgment as a matter of law and motion for a new trial. Those arguments are no more persuasive on appeal than they were below. As for the judgment order, we see no error in either the circuit court's entry of judgment against Wal-Mart for only thirty percent of the jury verdict or award of prejudgment interest on medical expenses to Ms. Ankrom. So, we

1

affirm the circuit court's order denying Wal-Mart's posttrial motions and the judgment order.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

Ms. Ankrom sued Wal-Mart in May 2015 after she sustained serious injuries in a collision with a fleeing shoplifter, Mr. Leist, in the Parkersburg Wal-Mart. She alleged, generally, the pursuit of Mr. Leist and attempt to apprehend him by Wal-Mart employees directly and proximately caused her serious injuries.[2] Wal-Mart pleaded, among other defenses, that Ms. Ankrom's injuries were "the result of independent and/or superseding causes over which [it had] no control or in any way participated." And, in November 2015, Wal-Mart filed a third-party complaint against Mr. Leist for contribution.

The parties tried Ms. Ankrom's claim against Wal-Mart in February and March 2019, approximately three years after she filed her complaint. Wal-Mart surveillance cameras captured the majority of events preceding Ms. Ankrom's injury, so the actual occurrence and sequence of those events was not contested. Instead, the dispute at trial concerned whether Wal-Mart employees' stop of Mr. Leist had complied with Wal-Mart's internal policy on apprehending shoplifters, "Investigation and Detention of

---

[1] We gratefully acknowledge the brief *amicus curiae* filed by the West Virginia Retailers Association.

[2] Wal-Mart does not dispute that it is vicariously liable for the acts of its employees within the scope of their employment under the doctrine of respondeat superior.

Shoplifters Policy (AP-09)," (AP-09 Policy), and whether Mr. Leist's flight inside the store was foreseeable to those same employees.[3]

Relative to those disputes, the jury heard testimony from four Wal-Mart employees: Nate Newbanks, asset protection associate; Joe Daniel, asset protection manager;[4] Amy Edgar, customer service manager and eyewitness; and Kevin Ohse, store manager. Ms. Ankrom;[5] her daughter, Sierra Thomas; and her son, George Ankrom, also testified.[6] The jury also heard portions of deposition testimony from Wal-Mart's corporate representative, Melissa Wacha, regarding Wal-Mart's shoplifting policies. And, the parties offered "dueling" experts, James Murphy for Ms. Ankrom, and William Birks for Wal-Mart. Two exhibits were entered into evidence: a DVD containing Wal-Mart surveillance video of the events of February 23, 2015, and the AP-09 Policy.

Trial testimony and surveillance footage established the following: On February 23, 2015, Mr. Newbanks observed Mr. Leist pocket a pair of auto mechanic

---

[3] Wal-Mart did not contest Ms. Ankrom's past or future medical expenses or her economic damages.

[4] By trial, Mr. Daniel's title had become "asset protection assistant manager."

[5] Ms. Ankrom did not appear at trial. Portions of her sworn deposition testimony were played for the jury.

[6] Ms. Ankrom also offered testimony from several expert witnesses regarding damages.

gloves.[7] Mr. Leist walked to the front of the store, and Mr. Newbanks followed. As captured by Wal-Mart surveillance cameras, Mr. Newbanks stopped Mr. Leist in the vestibule that separated the interior of the store from the parking lot. Mr. Newbanks positioned himself in front of Mr. Leist, between him and the door leading from the vestibule to the parking lot. Mr. Daniel, along with at least two other Wal-Mart employees, surrounded Mr. Leist. As shown by the surveillance cameras and confirmed by witness testimony, Mr. Daniel grabbed Mr. Leist's arm. At some point, Mr. Leist returned the gloves to Mr. Newbanks. Again, as shown by the surveillance cameras and confirmed by witness testimony, Mr. Leist then tried to get around Mr. Newbanks and Mr. Daniel, leading to a physical altercation, struggle, or scuffle—as characterized by various witnesses—in which the two men grabbed Mr. Leist's jacket, restrained him, and then spun him around to face the store's interior. According to Ms. Edgar, it appeared as if Mr. Newbanks and Mr. Daniel were wrestling Mr. Leist back toward the store's entry.[8]

After Mr. Leist "finally . . . calmed down," the two men released their hold on him. He then complied with the request of Mr. Newbanks and Mr. Daniel to go back inside the store. As the three men reentered the store's interior through the vestibule doors, surveillance footage shows that Mr. Newbanks walked behind Mr. Leist and Mr. Daniel

---

[7] Mr. Leist did not testify at trial.

[8] Ms. Edgar gave this testimony at her deposition. Counsel for Ms. Ankrom impeached Ms. Edgar with this statement during trial.

walked to his left. Seconds after reentering the store, Mr. Leist ran from Mr. Newbanks and Mr. Daniel. Ms. Ankrom's expert, Mr. Murphy, opined that Mr. Leist's flight was the "culmination of everything else that took place beforehand. The way it was stopped, the number of people, the struggle, and then they take a very relaxed atmosphere with it. That's why he was able to run." On the other hand, Wal-Mart's expert, Mr. Birks, opined that when a shoplifter like Mr. Leist decides to bolt and run, it is the shoplifter's own decision. He further testified that it was Mr. Leist's own "decision to bolt into the store. It wasn't a loss prevention management's efforts [sic.]. It was his and his alone effort to bolt back into the store."

Surveillance videos show that after Mr. Leist fled from Mr. Newbanks and Mr. Daniel, he turned into "action alley," a lane that runs perpendicular to the front of the store, delineated at the back by a wall of merchandise and to the front by the checkout lanes that funnel shoppers towards the vestibule. Store surveillance cameras captured that immediately upon turning into action alley, Mr. Leist collided with Ms. Ankrom's shopping cart. Ms. Ankrom tried to control the cart, but her knee gave out. She fell to the floor, and the cart came down on top of her. Ms. Ankrom's young granddaughter—who had been riding in the shopping cart—was also thrown to the floor, although she was not injured.

Immediately after the collision, Ms. Ankrom was transported to Camden Clark Memorial Hospital in Parkersburg and treated there for a severe attack of angina.

5

After experiencing increasing pain over the next two weeks, she was life-flighted to the Cleveland Clinic for surgery to treat bruising, necrosis, and microperforations in her small intestine. Since 2015, Ms. Ankrom has experienced over twenty inpatient hospitalizations, six surgeries, and other emergency room visits. As of the date of trial, her physicians were considering her for an intestinal transplant.

At the conclusion of evidence, the circuit court held a final instruction conference on March 1, 2019.[9] While Wal-Mart and Ms. Ankrom agreed on the majority of instructions to be delivered, they disagreed on the inclusion of an intervening/superseding cause instruction in the charge. The circuit court denied Wal-Mart's request to give the instruction. On March 4, 2019, the jury returned a verdict finding that Wal-Mart's negligence was a proximate cause of the injuries Ms. Ankrom sustained on February 23, 2015. The jury also found that Mr. Leist had been negligent, and that his negligence also proximately caused Ms. Ankrom's injuries. The jury found that Wal-Mart was thirty percent at fault for Ms. Ankrom's injuries and that Mr. Leist bore

---

[9] At the close of Ms. Ankrom's case-in-chief, Wal-Mart moved for judgment as a matter of law, arguing that Ms. Ankrom had not established that the actions of Wal-Mart's employees were the proximate cause of her injuries. The circuit court denied that motion because, in its view, Ms. Ankrom had produced sufficient evidence to permit the case to proceed. Wal-Mart renewed its motion for judgment as a matter of law at the close of evidence, which the circuit court denied as well.

6

the remaining seventy percent of fault. The jury awarded damages to Ms. Ankrom totaling $16,922,000.

On March 28, 2019, Ms. Ankrom filed a motion for entry of judgment order seeking judgment against Wal-Mart for the entire damages award, but with a right of contribution against Mr. Leist in the amount of seventy percent of the jury verdict, $11,845,400. Wal-Mart responded that under West Virginia Code § 55-7-24 (2005), it was responsible only for that portion of the verdict that corresponded to its comparative fault as determined by the jury. The circuit court agreed with Wal-Mart, reasoning that by enacting § 55-7-24 in 2005, the Legislature created a hybrid system of liability that mandated (1) that Mr. Leist, although a third-party defendant, count as a defendant for purposes of the statute; and (2) entry of judgment severally against Wal-Mart and Mr. Leist. On April 12, 2019, the circuit court entered a lengthy order memorializing that reasoning. That same day, the court entered judgment against Mr. Leist and Wal-Mart severally, in the amounts of $5,076,600 against Wal-Mart and $11,845,400 against Mr. Leist. The court also awarded Ms. Ankrom four percent, simple interest on her past medical expenses ($2,500,000) apportioned between Wal-Mart and Mr. Leist.

On April 26, 2019, Wal-Mart filed a Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial and Motion to Amend Judgment. Wal-Mart argued that the evidence offered at trial showed that Mr. Leist's flight—and not the actions of its employees in intercepting Mr. Leist or returning him

inside the store—proximately caused Ms. Ankrom's injuries. Wal-Mart argued that the circuit court further erred, and in a similar vein, when it refused to instruct the jury on intervening cause. And, Wal-Mart argued that the circuit court erred when it precluded Wal-Mart from using allegations from Ms. Ankrom's complaint at trial to impeach her credibility along with her daughter's. Finally, Wal-Mart argued that the circuit court erred by awarding Ms. Ankrom prejudgment interest on her medical expenses.[10]

The circuit court conducted a hearing on Wal-Mart's post-trial motions on June 24, 2019, and then denied them by order four days later. On July 2, 2019, the court entered an amended order elaborating on its rulings. The circuit court explained that, taking the evidence in the light most favorable to Ms. Ankrom, a reasonable factfinder could have found that Mr. Leist's flight was not the sole, proximate cause of Ms. Ankrom's injuries. With regard to the allegations from Ms. Ankrom's complaint, the court found that their probative value was slight and the likelihood that they would confuse the jury and prejudice Ms. Ankrom was substantial. The court found that the evidence offered at trial did not support an instruction on intervening cause, and that "conduct of [Mr.] Leist and of Wal-Mart security personnel while in the vestibule area where [Mr.] Leist was confronted and subsequently escorted back into the main body of the store was sufficient to refuse an

---

[10] Even though the jury did not award Ms. Ankrom punitive damages, Wal-Mart still challenged the circuit court's instruction on punitive damages, arguing that it gave "unwarranted credibility" to Ms. Ankrom's claims. The circuit court rejected that argument, and Wal-Mart does not renew it on appeal.

instruction on independent, intervening cause." Finally, the court found that it had not abused the discretion granted to it by West Virginia Code § 56-6-31(b) (2006) by awarding Ms. Ankrom prejudgment interest on her past medical expenses.

Wal-Mart now appeals the circuit court's July 2, 2019 amended order denying its renewed motion for judgment as a matter of law, or in the alternative, motion for new trial. It also renews its objection to the award of prejudgment interest on medical expenses to Ms. Ankrom. Ms. Ankrom cross-assigns error to the April 12, 2019 order in which the circuit court denied her motion for entry of judgment. We consider first Wal-Mart's assignments of error and then shift to Ms. Ankrom's cross-assignment of error.

## II. STANDARDS OF REVIEW

Wal-Mart appeals the circuit court's denial of its post-trial motion for judgment as a matter of law, made pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure. We review de novo the circuit court's decision to grant or deny a renewed motion for a judgment as a matter of law, which, in turn means that we review the parties' arguments just as the circuit court did. So, we take the evidence in the light most favorable to the non-moving party—here, Ms. Ankrom—to determine whether a reasonable trier of fact might have concluded that Wal-Mart was thirty percent at fault for Ms. Ankrom's injuries. Syllabus Points 1 and 2 of *Fredeking v. Tyler* encapsulate this standard:

> 1. The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law

9

after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*.

2. When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.[11]

Wal-Mart also appeals from the circuit court's denial of its motion for a new trial. We review that ruling, "and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."[12] A trial court's ruling on a motion for new trial will be reversed, however, " 'when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syllabus point 4, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976)."[13]

---

[11] Syl. Pt.s 1 and 2, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

[12] *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995).

[13] Syl. Pt. 3, in part, *Carpenter v. Luke*, 225 W. Va. 35, 689 S.E.2d 247 (2009).

## III. ANALYSIS

Wal-Mart's first and second assignments of error turn upon its overarching theory of this case: that it did not owe a duty to Ms. Ankrom and that, even if it did, Mr. Leist's decision to flee from Mr. Newbanks and Mr. Daniel once they reentered the store was the proximate cause of Ms. Ankrom's injuries. In its third and fourth assignments of error, Wal-Mart challenges two relatively discrete issues: use of the allegations in Ms. Ankrom's complaint at trial and prejudgment interest on medical damages. We address these assignments of error in turn.

### A. Duty and Proximate Cause

Wal-Mart argues that the circuit court erroneously denied its post-trial motion for judgment as a matter of law because, in its view, the undisputed testimony at trial established that it did not owe Ms. Ankrom a duty and that Mr. Leist's actions were the proximate cause of Ms. Ankrom's injuries—not those of Wal-Mart's employees. We disagree.

Fundamentally, "[n]egligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstance of time, place, manner, or person."[14] "[T]o prevail in a negligence suit, 'it is incumbent upon

---

[14] Syl. Pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W. Va. 511, 23 S.E. 582 (1895).

11

the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes him; (2) A negligent breach of that duty; (3) injuries received thereby, resulting proximately from the breach of that duty.'"[15] We next consider the first and then the third elements.

### 1) *Wal-Mart's Duty to Ms. Ankrom*

As to the first element, duty, "[i]n order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken."[16] As we have explained, foreseeability is key when determining whether a particular actor operates under a duty of care:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?[17]

---

[15] *Wheeling Park Comm'n v. Dattoli*, 237 W. Va. 275, 280, 787 S.E.2d 546, 551 (2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 121 W.Va. 115, 118, 2 S.E.2d 898, 899 (1939) (citations omitted)).

[16] Syl. Pt. 1, *Parsley v. Gen. Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981).

[17] Syl. Pt. 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988).

Wal-Mart raises two arguments as to why it did not owe a duty to Ms. Ankrom as a matter of law. We dispose of the first, quickly, and then examine the second in more depth. First, Wal-Mart points to the shopkeeper's privilege found in West Virginia Code § 61-3A-4 (1981) and intimates that the immunities bestowed upon merchants by the Legislature in that statute somehow extend to claims from bystanders like Ms. Ankrom. Section 61-3A-4 states:

> An act of shoplifting as defined herein, is hereby declared to constitute a breach of peace and any owner of merchandise, his agent or employee, or any law-enforcement officer who has reasonable ground to believe that a person has committed shoplifting, may detain such person in a reasonable manner and for a reasonable length of time not to exceed thirty minutes, for the purpose of investigating whether or not such person has committed or attempted to commit shoplifting. Such reasonable detention shall not constitute an arrest nor shall it render the owner of merchandise, his agent or employee, liable to the person detained.

Plainly, this statute does not say what Wal-Mart wants it to say.[18] The statute immunizes merchants and their agents from liability to suspected shoplifters so long as the merchant has "reasonable ground to believe" that the suspect has shoplifted and detains that suspect "in a reasonable manner and for a reasonable length of time . . . ." On its face, the statute does not extend that immunity to claims by a third party like Ms. Ankrom. And, the statute is permissive; it does not require a merchant like Wal-Mart to investigate and

---

[18] Obviously, the Legislature can amend § 61-3A-4 at any time.

13

detain suspected shoplifters. Rather, it protects the merchants from liability to the suspect should the merchant *choose* to take on the responsibility of investigating and detaining suspected shoplifters in a reasonable manner.

Second, Wal-Mart argues that, as a matter of law, it did not owe Ms. Ankrom a duty because its employees were authorized to investigate and detain Mr. Leist under the Wal-Mart shoplifting policy, Policy AP-09. That may be, but the policy's mere existence does not end the duty inquiry. While "a person does not [generally] have a duty to protect others from the deliberate criminal conduct of third parties," that duty of protection may arise "when the person's affirmative actions or omissions have exposed another to a foreseeable high risk of harm from the intentional misconduct."[19] So, on the facts of this case, the existence of a duty depends on whether Wal-Mart's employees' actions or omissions exposed Ms. Ankrom to a foreseeable high risk of harm from Mr. Leist's intentional misconduct, shoplifting.

Wal-Mart argues the apprehension of Mr. Leist by its associates did not expose Ms. Ankrom to a foreseeable high risk of harm because its associates complied with the policy, which, according to Wal-Mart, means that their employees exercised due care. Generally, the policy directed Wal-Mart's associates who were authorized to surveil,

---

[19] *Miller v. Wentworth*, 193 W. Va. 262, 266, 455 S.E.2d 821, 825 (1995) (citing RESTATEMENT (SECOND) OF TORTS §§ 302B cmt. e and 315 (Am. Law Inst. 1965)).

14

investigate and/or detain suspected shoplifters to "PUT PEOPLE FIRST," when investigating, detaining, or pursuing suspects. The policy also notified the authorized associates that "[p]rotecting the physical well-being of . . . customers, [among others] is your first priority." The policy included specific direction to those authorized associates as to how they could investigate, detain, and pursue suspected shoplifters safely. When approaching or investigating a suspect, the policy required authorized associates to disengage and withdraw from a violent suspect. If faced with physical resistance from a suspect, the policy directed the authorized associate to "determine whether [his or her] next reasonable step is to disengage from the confrontation or move to an authorized detention method." The policy also provided that an authorized associate could use "reasonable force to physically limit or control the movements of a Suspect," but that, "[i]f restraint is attempted and the [s]uspect cannot be controlled with a reasonable level of force, disengage from the situation, withdraw to a safe position, and contact law enforcement."

The jury heard conflicting testimony as to whether the apprehension of Mr. Leist complied with the policy. Mr. Newbanks initially testified that after he stopped Mr. Leist in the vestibule, Mr. Leist did not use any violence towards him or Mr. Daniel, and that Mr. Leist was just trying to get around them. Mr. Daniel testified similarly, stating that they detained Mr. Leist when he tried "to go through us," i.e., Mr. Newbanks and Mr. Daniel. However, Mr. Newbanks later conceded that Mr. Leist "struggled" to escape them. Likewise, Wal-Mart's expert witness, Mr. Birks, initially described Mr. Leist's interaction with Mr. Newbanks and Mr. Daniel in the store's vestibule as "resistance," but on

15

cross-examination, agreed that it was a "scuffle." According to a Wal-Mart employee who witnessed the apprehension, it appeared as if Mr. Newbanks and Mr. Daniel were wrestling Mr. Leist back toward the store's entry. Additionally, the jury viewed the surveillance video depicting the interaction among Mr. Leist, Mr. Newbanks, and Mr. Daniel numerous times. Contrary to Wal-Mart's assertion in its reply brief, that video clearly shows some sort of physical confrontation between the Wal-Mart employees and Mr. Leist. Taking that testimony and video footage in the light most favorable to Ms. Ankrom, we cannot say that a reasonable juror could not have concluded that Mr. Leist was violent at the most or physically resistant at the least. In the case of the former, the policy required the employees to disengage from the confrontation, which Mr. Newbanks and Mr. Daniel clearly did not do. In the case of the latter, the policy instructed Mr. Newbanks and Mr. Daniel to pick the more reasonable of two options: disengagement or detention. Given the totality of the testimony and surveillance video, a reasonable juror could have concluded that they picked the wrong one.

Moreover, the jury also heard deposition testimony from Wal-Mart's corporate representative, Ms. Wacha, that regardless of whether a shoplifter returns store merchandise, Wal-Mart's loss prevention associates may use verbal commands to stop a fleeing shoplifter, but they may not go further. In Ms. Wacha's words, "[r]egardless of whether we get the merchandise back or not, if the suspect attempts to flee or leave the facility, we act the same way. . . . Again, we attempt to verbally—with a few feet—try to get that person to back into the facility with us. And if they do not comply— . . . we let

16

them go." It was disputed at trial at exactly what point in the stop Mr. Leist returned the gloves to Mr. Newbanks. Regardless, taking Ms. Wacha's testimony at face value,[20] a reasonable juror might have concluded that once Mr. Leist tried to "go through them" or "struggled" to escape Mr. Newbanks and Mr. Daniel, Wal-Mart policy required them to let him go.

In sum, Wal-Mart incorrectly asserts that the evidence offered at trial indisputably showed that its employees complied with the policy. Taking the conflicting testimony as well as the surveillance footage described above in the light most favorable to Ms. Ankrom, we find that a reasonable juror could have concluded that in this case Wal-Mart employees exposed Ms. Ankrom to a foreseeable high risk of harm in the course of apprehending Mr. Leist and, therefore, that Wal-Mart owed a duty to Ms. Ankrom to protect her from his criminal conduct.

### 2) *The Proximate Cause of Ms. Ankrom's Injuries*

Wal-Mart next argues that, even if its employees did expose Ms. Ankrom to a foreseeable high risk of harm, Mr. Leist's decision to flee inside the store was the proximate cause of her injuries. According to Wal-Mart, Mr. Leist's flight superseded any

---

[20] Wal-Mart downplays Ms. Wacha's testimony, asserting that it conflicted with the language of the policy. That assertion, however, merely highlights the conflicting nature of the evidence submitted to the jury.

breach of its own duty, so he—and not Wal-Mart—was the sole proximate cause of Ms. Ankrom's injures.

"Proximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence."[21]  It is " 'that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred.' Syllabus Point 3, *Webb v. Sessler,* 135 W.Va. 341, 63 S.E.2d 65 (1950)."[22]  An intervening cause, however, may jump in, break that chain of causation, and so constitute the new, effective cause of the injury.  We have held that " ' " '[a]n intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.' Syllabus Point 16, *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963) [*modified on other grounds, State ex rel. Sutton v. Spillers,* 181 W.Va. 376, 382 S.E.2d 570 (1989)]." Syllabus Point 1, *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8 (1982).' Syl. Pt. 3, *Wehner v. Weinstein,* 191 W.Va. 149, 444 S.E.2d 27 (1994)."[23]  But not every intervening event wipes out another's preceding negligence.  In fact, " '[a] tortfeasor whose negligence is a substantial factor in bringing about injuries is

---

[21] Syl. Pt. 3, *McCoy v. Cohen*, 149 W. Va. 197, 140 S.E.2d 427 (1965).

[22] Syl. Pt. 4, *Spencer v. McClure*, 217 W. Va. 442, 618 S.E.2d 451 (2005).

[23] Syl. Pt. 8, *Harbaugh v. Coffinbarger*, 209 W. Va. 57, 543 S.E.2d 338 (2000).

18

not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.' Syl. Pt. 13, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990)."[24]

Initially, Wal-Mart asserts that the undisputed evidence at trial showed its employees could not have foreseen that Mr. Leist would run once back inside the store, meaning his negligence would supersede Wal-Mart's. Wal-Mart points to the following evidence to support that assertion: (1) Mr. Newbanks and Mr. Daniel testified that Mr. Leist agreed to go back inside the store with them; (2) The surveillance video shows that Mr. Daniel and Mr. Newbanks escorted Mr. Leist back into the store without force and in a calm and non-combative manner; (3) The surveillance video shows that Wal-Mart employees did not chase Mr. Leist after he returned to the store; (4) Mr. Daniel also testified that he had never been in a situation where a shoplifter fled toward the *inside* of the store; and (5) Ms. Ankrom's own expert acknowledged that Mr. Leist's decision to run was his alone.

Wal-Mart then suggests a comparison between the facts of this case and those in *Ward v. West*.[25] There, a suspected shoplifter ran from Sears employees and collided

---

[24] Syl. Pt. 9, *id.*

[25] *Ward v. West*, 191 W. Va. 366, 445 S.E.2d 753 (1994).

19

with a shopper.[26]  While store employees maintained they had been "politely escorting" the shoplifter to the store's security office before he ran,[27] an eyewitness later testified that the employees were chasing the shoplifter when he ran into the shopper.[28]  Citing that material, factual discrepancy, this Court reversed the grant of summary judgment to Sears and remanded the case for further proceedings.[29]

Wal-Mart extrapolates from our analysis in *Ward* a near-bright line rule that it asserts should have resulted in judgment as a matter of law:  "liability may be imposed only if there is an active pursuit or chase of a shoplifter who otherwise appears peaceful." We disagree, based in large part on the numerous cases cited in Wal-Mart's own briefing.[30]

---

[26] *Id*. at 367, 445 S.E.2d at 754.

[27] *Id*.

[28] *Id*. at 369, 445 S.E.2d at 756.

[29] *Id*. at 370, 445 S.E.2d at 757.

[30] *See Mills v. Jack Eckerd Corp*., 482 S.E.2d 449, 449–50 (Ga. App. 1997) (affirming summary judgment to store on shopper's negligence claim where shoplifter had "voluntarily accompanied" store employees to office before fleeing, "suddenly and without warning"); *Butler v. K-Mart Corp*., 432 So. 2d 968, 968–69 (La. Ct. App. 1983) (affirming summary judgment to merchant where cause of injury suffered by plaintiff was not foreseeable; depositions did not show that store manager chased shoplifter out of the store before he collided with plaintiff in parking lot); *Graham v. Great Atl. & Pac. Tea Co.*, 240 So. 2d 157, 157–59 (Fla. Dist. Ct. App. 1970) (holding that "a storeowner is not negligent, absent special circumstances, in attempting to detain suspected shoplifters, and does not create any foreseeable risk of harm to business invitees by doing so" where burly shoplifter acquiesced to slight-statured manager's request to follow him back inside the store, then ran and injured a bystander). *But see Kilpatrick v. Dollar Tree Stores, Inc.*, No. 2:13-CV-

While those cases arose in the context of fleeing shoplifters, their outcomes did not depend, solely, on whether the merchant gave chase. So, they do not support Wal-Mart's requested, bright-line rule. Instead, they turned on whether, under the particular facts and circumstances of each case, the shoplifter's flight was foreseeable. For example, in *Martin v. Piggly Wiggly Corp.*, a Louisiana appellate court affirmed the trial court's finding that a store had "no duty to protect patrons from unforeseeable or unanticipated intentional acts perpetrated by a third party" where, before colliding with a patron, the shoplifter "went quietly" in response to a store employee's request to follow her to a security area.[31] In *Knight v. Powers Dry Goods Co.*, the Supreme Court of Minnesota reversed a jury verdict for a plaintiff where the storeowner's employees did not have "any reasonable ground to anticipate that the act of taking [a shoplifter] over to the [store] elevator would or might result in any injury to anybody" because the shoplifter had agreed to come inside when asked to do so and walked along quietly even after a store detective took hold of his arm.[32] In *K-Mart Corp. v. Lentini*, the appellate court reversed a jury verdict for the plaintiff because "Kmart's conduct [had not] foreseeably created a broader

2659-SHL-TMP, 2014 WL 12531118, at *3 (W.D. Tenn. Sept. 19, 2014) (granting store's motion for summary judgment where risk that fleeing shoplifter would run into bystander was not foreseeable; shoplifting was rare in the store and illogical to foresee that shoplifter would run into a bystander and so impede his flight).

[31] 469 So. 2d 1057, 1059 (La. Ct. App. 1985).

[32] 30 N.W.2d 536, 537, 539 (Minn. 1948).

zone of risk that posed a general threat of harm to others"[33] where the shoplifter, "who until then had been calm and cooperative, suddenly left his chair and ran out of the conference room and through the store, [before] colliding with the plaintiff."[34]

In *Radloff v. National Food Stores, Inc.*, the Supreme Court of Wisconsin reversed a jury verdict in favor a bystander who was injured by a fleeing shoplifter.[35] The shoplifter had hesitated to follow store personnel, at first, but then acquiesced once they "asked [him] to please come back into the store" and assured him that they would not "gang up" on him.[36] The court rejected the trial court's conclusion that the store employees carelessly escorted the shoplifter to the rear of the store because "they had no reason to believe that he was about to act as he did,"[37] that is, based on the shoplifter's earlier behavior, the employees could not have foreseen his flight. Notably, there is no indication in *Radloff* that the shoplifter physically resisted apprehension by store employees before agreeing to reenter the store. Instead, when employees confronted the shoplifter in the store's vestibule, they

> asked the shoplifter if he would please come back into the store
> and come to the rear of the store. The shoplifter replied: ["]No,

---

[33] 650 So. 2d 1031, 1032 (Fla. Dist. Ct. App. 1995) (internal quotation omitted).

[34] *Id.*

[35] 121 N.W.2d 865, 866 (Wis. 1963).

[36] *Id.*

[37] *Id* at 871.

you're going to gang up on me.["] The employees assured him that they were not going to gang up on him and asked him again to please come back into the store. He agreed. The two employees and the shoplifter reentered the store.[38]

None of these cases establish the per se rule that Wal-Mart wants. And, none of them dictates that Wal-Mart was entitled to judgment as matter of law on Ms. Ankrom's negligence claim. In *Martin*, *Knight*, *Lentini*, and *Radloff*, the shoplifters submitted to store employees' initial requests to follow them to a security office or other location inside the store. Based on the evidence offered at trial, that was not the case, here. Mr. Newbanks and Mr. Daniel described their encounter with Mr. Leist in the store's vestibule as a "struggle" and a "scuffle," respectively. Mr. Daniel testified that he had never been in a situation where a shoplifter fled toward the inside of the store, but Mr. Newbanks testified at his deposition that it was foreseeable that Mr. Leist would run because he had already tried once.[39] And, while Mr. Murphy acknowledged that Mr. Leist's decision to run was his own, he also opined that Mr. Leist's flight was the "culmination of everything else that took place beforehand. The way it was stopped, the number of people, the struggle, and then they take a very relaxed atmosphere with it. That's why he was able to run." In sum, while Mr. Newbanks and Mr. Daniel testified that Mr. Leist agreed to go back inside the

---

[38] *Id.* at 866.

[39] Ms. Ankrom's counsel impeached Mr. Newbanks with his deposition testimony at trial. In the course of that impeachment, Mr. Newbanks acknowledged that at his deposition, he had answered "Yeah," when asked whether he "knew that there was a danger that [Mr. Leist] was going to flee, because he had already tried once, correct?"

store with them, that acquiescence does not necessarily undo the foreseeable high risk of harm created by Wal-Mart employees in the course of apprehending Mr. Leist moments before he fled.

We have held that even where a third person's acts intervene in the causal chain leading to injury, those intervening acts do not relieve the first link in that chain from liability " 'if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.' Syl. Pt. 13, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990)."[40] Taking the evidence offered at trial in the light most favorable to Ms. Ankrom, a reasonable juror could certainly have concluded that Mr. Leist's flight was foreseeable—or should have been foreseeable—to Wal-Mart employees, chase or no chase.[41] A reasonable juror could have also concluded that Mr. Leist's decision to flee inside the store did not operate independently of his apprehension by Wal-Mart employees in the store's vestibule, so that his flight was not the sole proximate cause of Ms. Anrkom's injury. For those reasons, the circuit court did not err when it denied Wal-Mart's renewed motion for judgment as a matter of law.

---

[40] Syl. Pt. 9, in part, *Harbaugh*, 209 W. Va. at 57, 543 S.E.2d at 338.

[41] *See Colombo v. Wal-Mart Stores, Inc.*, 709 N.E.2d 301, 302–03 (Ill. App. Ct. 1999) (where security personnel detained and gained control of shoplifter outside of store, then brought the shoplifter back inside where he fled and injured a bystander, holding that "once security personnel undertook the duty of detaining the suspect and escorting him back into the store, they were under a duty to use reasonable care in carrying out that process.").

24

## B. *Intervening Cause Jury Instruction*

Wal-Mart argues that it is entitled to a new trial because the circuit court erred when it refused to instruct the jury on intervening cause. The proposed instruction correctly stated the law of intervening cause and that concept was not covered elsewhere in the jury instructions, according to Wal-Mart. It also argues that the evidence shows that any negligence in its employees' stop of Mr. Leist ended when he willingly returned to the store, so the circuit court's refusal to deliver the intervening cause instruction seriously hampered its ability to present one of its defenses.

In response, Ms. Ankrom emphasizes the circuit court's broad discretion when drafting jury instructions and the deference afforded to a court's refusal to give a particular instruction.[42] Ms. Ankrom asserts that evidence offered at trial conclusively showed that Mr. Leist's flight upon reentry to the store was foreseeable to Wal-Mart's employees and the circuit court did not abuse its discretion when it found that the facts adduced at trial did not support delivery of the intervening cause instruction requested by Wal-Mart. She also argues that because Wal-Mart requested an instruction on joint

---

[42] Ms. Ankrom does not contend that Wal-Mart's proposed instruction on intervening cause misstated the applicable law.

negligence, the circuit court could not also give the intervening cause instruction because the two conflicted.[43]

We review a circuit court's refusal to deliver a requested jury instruction for an abuse of discretion.[44] That standard also applies to our determination of "[w]hether facts are sufficient to justify the delivery of a particular instruction."[45] As to "the degree of evidence necessary to support the giving of a particular instruction,"[46] we have held that:

> " ' " 'If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory.' Syllabus Point 2, *Snedeker v. Rulong,* 69 W.Va. 223, 71 S.E. 180 (1911)." Syllabus Point 4, *Catlett v. MacQueen,* 180 W.Va. 6, 375 S.E.2d 184 (1988).' Syllabus point 6, *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert. denied,* 511 U.S. 1129, 114 S.Ct. 2137, 128

---

[43] In reply, Wal-Mart asserts that jury instructions that present alternative theories are not in conflict, as Ms. Ankrom argues, and so the circuit court could not have properly refused to give the proposed intervening cause instruction for that reason. Wal-Mart attempts to distinguish the cases cited by Ms. Ankrom, concluding that they prohibit a circuit court from delivering instructions that are contradictory on the same point of law. Wal-Mart reiterates its arguments that the evidence at trial supported delivery of its jury instruction on intervening cause and that the circuit court's refusal of the instruction seriously hampered the presentation of its defense.

[44] *Kessel v. Leavitt*, 204 W. Va. 95, 144, 511 S.E.2d 720, 769 (1998) (" 'As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion.' ") (quoting Syl. Pt. 1, in part, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996)).

[45] Syl. Pt. 12, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

[46] *Coleman v. Sopher*, 201 W. Va. 588, 602, 499 S.E.2d 592, 606 (1997).

L.Ed.2d 867 (1994)." Syllabus point 3, *Craighead v. Norfolk & Western Railway Company,* 197 W.Va. 271, 475 S.E.2d 363, (1996).[47]

In total, and to afford appropriate deference to the circuit court's decision to refuse to deliver a particular instruction, "we will presume that the trial court acted correctly unless it appears from the record in the case that the instructions refused were correct and should have been given."[48]

The circuit clearly expressed its rationale for refusing to instruct the jury on intervening cause in the amended order denying Wal-Mart's motion for a new trial:

> The premise of Wal-Mart's position is that the act of Robert Leist in running from security upon returning to the main part of its store was an intervening, superseding cause of plaintiff's injuries. The premise is unfounded. The [c]ourt properly determined that the evidence failed to establish that Leist's conduct was an intervening cause and did not support instruction on intervening cause. The evidence presented as to the conduct of Leist and of Wal-Mart security personnel while in the vestibule area where Leist was confronted and subsequently escorted back into the main body of the store was sufficient to refuse an instruction on independent, intervening cause.

---

[47] Syl. Pt. 4, *id.*

[48] *Kessel*, 204 W. Va. at 144, 511 S.E.2d at 769 (cleaned up).

The circuit court also acknowledged in the amended order Wal-Mart's theory that *Ward v. West* controlled the outcome of this case. It discounted the import of *Ward*, however, because it found that the evidence presented at trial distinguished this case.

Given the deferential standard of review, we cannot say that the circuit court's rationale and resultant ruling are an abuse of its discretion. "In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them."[49] The court considered the evidence offered at trial to determine whether it justified delivery of the instruction. It also considered Wal-Mart's argument that *Ward v. West* mandated the instruction. It then exercised its discretion and concluded that they did not. Simply stated, the circuit court did not ignore a factor or rely on an improper one. Rather, it did not afford Wal-Mart's intervening cause theory the weight Wal-Mart believed it was due.

Even if the circuit court had abused its discretion by refusing to instruct the jury on intervening cause, Wal-Mart must still demonstrate that the circuit court's abuse of discretion "constitutes reversible harmful error."[50] As we have held, we consider three factors in this analysis:

---

[49] *Gentry v. Mangum*, 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995).

[50] *Kessel,* 204 W. Va. at 145, 511 S.E.2d at 770.

28

A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.[51]

Regardless of the first two factors, Wal-Mart cannot demonstrate that the circuit court's refusal to deliver the intervening cause instruction "seriously impaired [its] ability to effectively present [that] defense." Wal-Mart emphasized the evidence that it contends supports its intervening cause theory during closing argument. For example, Wal-Mart highlighted for the jury Mr. Leist's agreement to go back inside the store, as well as Mr. Daniel's testimony that he had never seen a suspected shoplifter run into a store.

And, Wal-Mart emphasized to the jury its theory that Mr. Leist's decision to run was the *sole cause* of Ms. Ankrom's injuries and explained how the jury could adopt that theory in the verdict form:

[Ms. Ankrom] is trying to blame everything on WalMart.

And you can see that in the verdict form. The first question that you're going to be asked to answer – and [Ms. Ankrom's counsel] gave you a preview of it already – is "Do

---

[51] Syl. Pt. 11, *Derr*, 192 W. Va. at 165, 451 S.E.2d at 731. *See* W. Va. R. Civ. P. 61, in part ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). *Cf. Danco, Inc. v. Donahue*, 176 W. Va. 57, 60, 341 S.E.2d 676, 679 (1985) ("On the other hand, refusing to instruct the jury on a litigant's theory of the case when it is supported by competent evidence prevents consideration of that theory by the jury, and thus invites reversal.").

you find that Walmart was negligent?" I'd submit to you that based upon the evidence that's in front of you and the law that the Judge described to you, the answer to that is "No."

WalMart was apprehending a shoplifter in accordance with policy. They were walking him back in, and the shoplifter made a decision of his own, and that decision was to take off running.

We're here today because of a shoplifter. That is why we're here. And I'd ask that you remember that when you go back to the jury room to deliberate.

Now, getting back here, if you answer "No" to this question, you're done. They're looking to hold WalMart responsible for this entire thing. They have – they don't care about Mr. Leist, even though Mr. Leist is the one who knocked her to the ground running by [sic.] when he was running in a haphazard way. They only want us.

***

And if you do select "Yes, [that Mr. Leist was negligent]," you are required to figure out the percentage of fault between the two parties. And that's something that you all would have to do, based on the evidence.

Again, we're here because of Mr. Leist. We're not here for any other reason.

To sum up, Wal-Mart argued to the jury that Mr. Leist's decision to run was completely independent of its employees' actions in the vestibule. It also argued that Mr. Leist's decision to run—and not the actions of its employees—was the sole cause of Ms. Ankrom's injuries. Finally, Wal-Mart actually told the jury that if it concluded that Mr. Leist's decision to run was his own, then the jury should answer "No" to the first question on the verdict form: "Do you find that Wal-Mart was negligent and such negligence was

30

a proximate cause of the injuries sustained by Diane Ankrom on February 23rd, 2015?" In view of Wal-Mart's statements during closing arguments as well as its directions to the jury on how to fill out the verdict form if it accepted Wal-Mart's theory that Mr. Leist was the sole cause of Ms. Ankrom's injuries, the circuit court's refusal to instruct the jury on intervening cause did not seriously impair Wal-Mart's ability to effectively present its intervening cause defense. So, any error by the circuit court in refusing that instruction is not harmful, reversible error.[52]

## C.    *Impeachment by Allegations in Plaintiff's Complaint*

As noted above, Ms. Ankrom initially sued Wal-Mart and its employee, Ryan Clinton. She alleged in the complaint that Mr. Clinton pursued Mr. Leist after he ran from security personnel. Ms. Ankrom dismissed Mr. Clinton before trial, then moved to preclude Wal-Mart from referring to him or to the chase allegations in Ms. Ankrom's complaint. The circuit court granted Ms. Ankrom's motion. We review that ruling for an abuse of discretion.[53]

---

[52] Because the circuit court's refusal to instruct the jury on intervening cause did not seriously impair Wal-Mart's ability to present its intervening cause defense, we do not address Ms. Ankrom's argument that the intervening cause instruction conflicted with the joint negligence instruction, which Wal-Mart also requested.

[53] Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.")

Wal-Mart argues that the circuit court's ruling is erroneous because the chase allegations in Ms. Ankrom's complaint show that her theory of liability was a "moving target."[54] Wal-Mart further argues that cross-examination of Ms. Ankrom with those allegations was necessary for it to make a "full and complete presentation of the case to the jury."

After reviewing the parties' arguments as well as the evidence at trial, we conclude that even if the circuit court abused its discretion when it precluded Wal-Mart from impeaching Ms. Ankrom with the "chase" allegations in her complaint, any error was harmless. Under Rule 61 of the West Virginia Rules of Civil Procedure, we are to "disregard any error or defect in the [trial] which does not affect the substantial rights of the parties." Moreover, "[a] party is entitled to a new trial only if there is a reasonable probability that the jury's verdict was affected or influenced by trial error."[55]

---

[54] Wal-Mart repeatedly complains that Ms. Ankrom seemingly abandoned her original theory of the case—that Wal-Mart employees chased Mr. Leist before he collided with her—on the eve of trial. West Virginia Rule of Civil Procedure 15(b) belies Wal-Mart's complaint. Under Rule 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Wal-Mart was certainly prepared at trial to address Ms. Ankrom's theory that Wal-Mart employees' initial stop of Mr. Leist in the store vestibule did not comply with Wal-Mart policy and was a proximate cause of Ms. Ankrom's injury. And, Wal-Mart in fact took advantage of Ms. Ankrom's shifting theory of liability, using it for impeachment as described above.

[55] *Tennant*, 194 W. Va. at 111, 459 S.E.2d at 388.

Here, we find that it is not reasonably probable that Wal-Mart's inability to impeach Ms. Ankrom with the "chase" allegations affected or influenced the jury's verdict because Wal-Mart effectively impeached Ms. Ankrom on this issue in other ways. Wal-Mart elicited testimony from Ms. Ankrom that she observed Mr. Newbanks jogging at the front of the store, like "he was on a mission," before Mr. Leist ran into her. She then testified that "within seconds" of observing Mr. Newbanks, Mr. Leist "blasted into [her] shopping cart" while running "[f]ast, like he was running away from something." Inference: Mr. Newbanks chased Mr. Leist into Ms. Ankrom.

However, Ms. Ankrom also testified that she "didn't know why" Mr. Leist was running. Later, on cross-examination, Ms. Ankrom admitted that she had not seen any Wal-Mart employees running towards her while she stood in the action aisle, before the collision with Mr. Leist. Ms. Ankrom also admitted that she did not observe Mr. Leist coming back into the store because she couldn't see the vestibule from where she stood. Inference: No Wal-Mart employee chased Mr. Leist as he ran toward Ms. Ankrom and, even if one had, Ms. Ankrom couldn't have seen it. Impeachment accomplished.

Finally, Wal-Mart tied a bow on that discrepancy during closing argument:

> One of the other things that has been alleged in this case – and I'll say that it has been getting quieter and quieter through the week – is that one of the five things, the five points that were pointed out to you by [Ms. Ankrom's counsel] at the start of this case is the word "chase."

33

Well, that seems to have gone away. There was no chase of the suspect once he broke free and when he was walking into the store. So that seems to have gone away.

*\*\**

You're going to recall that Ms. Ankrom's testimony was that she was standing in the candy aisle when she was observing someone from loss prevention running . . . .

And the reason I'm pointing that out is just to point out an inconsistency between what is being said on the witness stand . . . here she is, here's everybody already in the vestibule.

Her testimony, people running. That's an impossibility.

Considering Wal-Mart's examination of Ms. Ankrom and coverage of the chase theory during closing arguments, it is improbable that the circuit court's exclusion of certain allegations in Ms. Ankrom's complaint affected the jury verdict. Consequently, any error by the circuit court was harmless.[56]

### D. Prejudgment Interest on Past Medical Expenses

Ms. Ankrom received disability benefits due to a condition that preceded her injury in February 2015. So, she did not pay for medical expenses incurred after her injury and before judgment was entered against Wal-Mart and Mr. Leist in April 2019. After the

---

[56] Wal-Mart also argues that the circuit court abused its discretion by prohibiting impeachment of Ms. Ankrom's daughter, Sierra Thomas, with the chase allegations in Ms. Ankrom's complaint. We fail to see how the allegations in *Ms. Ankrom's* complaint are relevant to Ms. Thomas's veracity. The complaint contains Ms. Ankrom's allegations, not Ms. Thomas's. Moreover, Ms. Thomas did not witness her mother's injury.

jury rendered its verdict, Ms. Ankrom requested that the circuit court award her prejudgment interest on her past medical expenses. Wal-Mart objected, but the court awarded Ms. Ankrom four percent prejudgment interest on the $2,500,000 jury award for past medical expenses. Wal-Mart now asks this Court to reverse the April 12, 2019 judgment order.

Wal-Mart argues that the circuit court abused its discretion under West Virginia Code § 56-6-31(b) (2006) by imposing that interest because Ms. Ankrom was not obligated to pay medical expenses at trial.[57] Wal-Mart relies upon a portion of Syllabus Point 3 of our decision in *Grove By and Through Grove v. Myers*, in which we stated:

> Under *W.Va.Code*, 56–6–31, as amended, prejudgment interest is to be recovered on special or liquidated damages incurred by the time of the trial, whether or not the injured party has by then paid for the same. If there is sufficient evidence to demonstrate that the injured party *is obligated to pay* for medical or other expenses incurred by the time of the trial, and if the amount of such expenses is certain or reasonably ascertainable, prejudgment interest on those expenses is to be recovered from the date the cause of action accrued.[58]

---

[57] West Virginia Code § 56-6-31(b) states that a court "may award prejudgment interest on all or some of the amount of the special . . . damages [which] include . . . medical expenses . . . ."

[58] Syl. Pt. 3, *Grove By & Through Grove v. Myers*, 181 W. Va. 342, 382 S.E.2d 536 (1989) (emphasis added).

According to Wal-Mart, because a third party paid for Ms. Ankrom's medical expenses incurred by the time of trial, she wasn't obligated to pay any medical bills then, so she wasn't entitled to prejudgment interest under § 56-6-31(b).

We disagree, and find no abuse of discretion in the circuit court's award of prejudgment interest to Ms. Ankrom on her past medical expenses. Wal-Mart is making a collateral source argument, and it is one that this Court has already addressed in *Ilosky v. Michelin Tire Corp.*[59] There, a jury awarded Ms. Ilosky $500,000 in compensatory damages for horrible injuries she suffered in a car accident caused by the defendant-tire company's negligence.[60] At trial, the tire company "attempted to cross-examine [Ms. Ilosky's] economist on what expenses [she] had actually paid for between the time of injury and trial, and what expenses had been paid for by other sources, such as insurance."[61] The tire company's theory was essentially the same as Wal-Mart's: that "it should not be held liable for prejudgment interest on expenses which the appellee did not actually incur because she then did not actually lose the use of funds."[62]

---

[59] *Ilosky v. Michelin Tire Corp.*, 172 W. Va. 435, 307 S.E.2d 603 (1983).

[60] *Id*. at 445–46, 307 S.E.2d at 613–14.

[61] *Id*. at 446, 307 S.E.2d at 614–15.

[62] *Id*. at 447, 307 S.E.2d at 615.

36

This Court rejected that theory because it ran counter to the premise behind the collateral source rule, that "it is better for injured plaintiffs to receive the benefit of collateral sources in addition to actual damages than for defendants to be able to limit their liability for damages merely by the fortuitous presence of these sources."[63] Consequently, even though interest on special damages "serves to compensate for the loss of the use of funds that have been expended,"[64] this Court found that the collateral source rule demanded payment of prejudgment interest to Ms. Ilosky, even if a collateral source had actually paid her medical expenses. We concluded that, "[r]egardless of who pays the bill for expenses prior to trial, someone is losing the use of that money. Injured plaintiffs should not have to forego the collateral source rule merely to recover prejudgment interest."[65]

We reach the same conclusion here. While Ms. Ankrom was not obligated to pay for her past medical expenses due to disability benefits predating her February 2015 injury, someone was, which, as in *Ilosky*, means that someone lost the use of those funds. Prejudgment interest on medical expenses is intended to compensate for that loss. If this Court would accept Wal-Mart's argument—that it doesn't have to pay prejudgment interest

---

[63] *Id*. at 446, 307 S.E.2d at 615.

[64] *Id*. at 447, 307 S.E.2d at 615 (quotation omitted).

[65] *Id*. *Cf*. Syl. Pt. 1, *Buckhannon-Upshur Cty. Airport Auth. v. R & R Coal Contracting, Inc.*, 186 W. Va. 583, 584, 413 S.E.2d 404, 405 (1991) ("Prejudgment interest, according to West Virginia Code § 56–6–31 (1981) and the decisions of this Court interpreting that statute, is not a cost, but is a form of compensatory damages intended to make an injured plaintiff whole as far as loss of use of funds is concerned.").

on medical expenses to Ms. Ankrom because her disability benefits covered those expenses—then we would advantage Wal-Mart, disadvantage Ms. Ankrom, and frustrate the purpose of the collateral source doctrine. "Injured plaintiffs should not have to forego the collateral source rule merely to recover prejudgment interest."[66]

Wal-Mart cherry-picks language from our decision in *Grove By & Through Grove v. Myers* to support its position that the circuit court abused its discretion by awarding Ms. Ankrom prejudgment interest on her medical expenses. That argument is not well-taken because *Grove* restates the rule from *Ilosky*. And, the additional cases cited by Wal-Mart are distinguishable.[67] For those reasons, we find that the circuit court did not abuse its discretion by awarding Ms. Ankrom prejudgment interest on her past medical expenses.

### E.    *Ms. Ankrom's Cross-Assignment of Error*

Ms. Ankrom cross-assigns as error the circuit court's refusal to enter her proposed judgment order. Under that proposed order, the circuit court would have entered

---

[66] Syl. Pt. 13, *id.*

[67] *See Doe v. Pak*, 237 W. Va. 1, 7, 784 S.E.2d 328, 334 (2016) (prejudgment interest on loss of household services—an out-of-pocket expenditure under W. Va. Code § 56-6-31—available only where "the claimant has incurred an obligation to pay some sort of compensation for household services"); *Miller v. Fluharty*, 201 W. Va. 685, 701, 500 S.E.2d 310, 326 (1997) (no prejudgment interest on policyholder's attorney's reasonable litigation expenses because they were not "out-of-pocket expenditures" under W. Va. Code § 56-6-31).

judgment against Wal-Mart for the full amount of the jury verdict with a right to contribution from Mr. Leist, rather than thirty percent of the total ($5,076,600), only. Ms. Ankrom insists that because Mr. Leist is a third-party defendant, he is not a "defendant" for purposes of West Virginia Code § 55-7-24 (2005).[68] According to Ms. Ankrom's theory that means, in turn, that the statute simply doesn't apply to this situation and Wal-Mart is jointly and severally liable to Ms. Ankrom. We disagree.

Ms. Ankrom's cross-assignment of error requires us to interpret § 55-7-24. The interpretation of a statute is a question of law that we review de novo. When we conduct that review, our "primary object in construing [the] statute is to ascertain and give effect to the intent of the Legislature."[69] To ascertain the Legislature's intent for a particular statute, we cannot view a subsection of that statute in a vacuum. Instead, "[i]n ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation."[70] Once we do that, a statute will appear either plain or ambiguous. If the "statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the

---

[68] The Legislature repealed § 55-7-24 effective May 25, 2015. Ms. Ankrom was injured in February 2015, so § 55-7-24 (2005) still applies to her case.

[69] Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

[70] Syl. Pt. 2, *id*.

39

courts, and in such case it is the duty of the courts not to construe but to apply the statute."[71]

Conversely, if "the statute's language connotes doubtfulness, doubleness of meaning or indistinctness or uncertainty of an expression," then it must be construed.[72] Applying those rules to § 55-7-24, we see no ambiguity in the statutory language and find, contrary to Ms. Ankrom's argument, that for purposes of § 55-7-24, a "third-party defendant" like Mr. Leist is a "defendant."

> The operative language of § 55-7-24 states that,
>
> (a) In any cause of action involving the tortious conduct of more than one *defendant*, the trial court shall:
>
> (1) Instruct the jury to determine, or, if there is no jury, find, the total amount of damages sustained by the *claimant* and the proportionate fault of each of the *parties* in the litigation at the time the verdict is rendered; and
>
> (2) *Enter judgment* against each *defendant* found to be liable on the basis of the rules of joint and several liability, except that if any *defendant* is thirty percent or less at fault, then that defendant's liability shall be several and not joint and he or she shall be liable only for the damages attributable to him or her, except as otherwise provided in this section.[73]

---

[71] Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

[72] *State ex rel. Morrisey v. Copper Beech Townhome Communities Twenty-Six, LLC*, 239 W. Va. 741, 747, 806 S.E.2d 172, 178 (2017) (quotations and alterations omitted).

[73] Emphasis added.

By its plain language, the statute kicks in when "a cause of action involve[es] the tortious conduct of more than one defendant . . . ." This expansive language is telling, and it strongly contradicts Ms. Ankrom's position that, in the context of this statute, "defendant" does not include a third-party defendant, such as Mr. Leist. Notice that the Legislature did not say that the statute applies when a plaintiff sues more than one tortfeasor, but not when a plaintiff sues only one tortfeasor, even though there may be other individuals or entities whose conduct contributed to the plaintiff's injury. Had the Legislature intended § 55-7-24 to put the plaintiff in the driver's seat, it would have said so. It did not. Instead, it directed that the statute should apply to a broader scope of tortious conduct than that of the party the plaintiff chooses to sue.[74]

Next, the statute specifies that "when a cause of action involve[es] the tortious conduct of more than one defendant," the circuit court must instruct the jury to find the total amount of the damages sustained by the claimant. The court must also instruct the jury to apportion the fault for that injury among "each of the parties in the litigation at

---

[74] Ms. Ankrom also argues that because Wal-Mart sought contribution from Mr. Leist in its third-party complaint, that is the only role that Mr. Leist could ever play in the litigation. That argument ignores West Virginia Rule of Civil Procedure 54(c), which states in pertinent part that, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Citing that rule and Rule 15(b), relating to amendment of pleadings to conform to evidence at trial, we have observed that "[c]hallenges based on such technicalities cannot prevail under our Rules of Civil Procedure." *Elsey Ford Sales, Inc. v. Solomon*, 167 W. Va. 891, 895, 280 S.E.2d 718, 721 (1981) (cleaned up). For those reasons, we reject Ms. Ankrom's argument that a pleading technicality precludes application of § 55-7-24 in this case.

the time the verdict is rendered." This language deeply undermines Ms. Ankrom's theory: why would a third-party defendant, who is still in the case when a verdict is rendered, not be a "part[y] in the litigation"? "[W]hen we interpret a statutory provision, this Court is bound to apply, and not construe, the enactment's plain language," and we see no reason to do anything but that in this case.[75] The Legislature's choice to use "party" in § 55-7-24(a)(1) further demonstrates its intent that the statute apply to the tortious conduct of more than one defendant—including those in the litigation in a third-party capacity.

Finally, § 55-7-24(a)(2) directs the circuit court to "[e]nter judgment against each defendant found to be liable on the basis of the rules of joint and several liability . . . ." The statute then tempers that rule for "any defendant [that] is thirty percent or less at fault"—not just those whom the plaintiff has choosen to sue—by mandating that such a "defendant's liability shall be several and not joint and he or she shall be liable only for the damages attributable to him or her, except as otherwise provided in this section."

Viewing § 55-7-24 in total, we cannot accept Ms. Ankrom's theory that third-party defendants don't count for the purpose of determining whether that statute applies because, as the circuit court found, the statute

> effected a fundamental change in tort law by, for the first time, explicitly creating an exception to the principle of joint and

---

[75] *Rose ex rel. Rose v. St. Paul Fire & Marine Ins. Co.*, 215 W. Va. 250, 255, 599 S.E.2d 673, 678 (2004).

several liability by its adoption of what may be called "the thirty percent rule." This fundamental change would have been rendered meaningless if plaintiff's interpretation of the term "defendant" as used in [§] 55-7-24(a) were accepted for in that case, plaintiffs and only plaintiffs would control whether and which, tortfeasors would be subject to joint and several liability and which would not be.

It is an easy retort that § 55-7-24 says "defendant," and not "third-party defendant." But, "[i]t is always presumed, in regard to a statute, that no . . . unreasonable result was intended by the Legislature."[76] Taken to its outer limits, Ms. Ankrom's theory would undo § 55-7-24, because the statute's application would always depend on whether a plaintiff chooses to sue one tortfeasor, but not more. At that outer limit, the Legislature might as well not have enacted the statute, at all. For that reason, we must reject Ms. Ankrom's proposed interpretation of § 55-7-24 and affirm the circuit court's judgment order entered April 12, 2019.

## IV. CONCLUSION

For the reasons discussed above, we affirm the circuit court's July 2, 2019 amended order denying Wal-Mart's renewed motion for judgment as a matter of law, or in the alternative, motion for new trial and the court's April 12, 2019 judgment order.

AFFIRMED

---

[76] *Click v. Click*, 98 W. Va. 419, 127 S.E. 194, 198 (1925) (quoting *Rice and Others v. Ashland Co.*, 108 Wis. 189 84 N.W. 189 (1900)).